Temple, J., McFarland, J., Henshaw, J.

---

[Crim. No. 360. Department Two.—May 18, 1898.]

THE PEOPLE, Respondent, v. FRANK PRATHER, Appellant.

CRIMINAL LAW—GRAND LARCENY—DESCRIPTION OF PROPERTY—ESTATE OF DECEASED PERSONS.—Under the Penal Code, an information for grand larceny, in which the property stolen is described as cattle belonging to the estate of a deceased person, without specifying his heirs or legal representatives, is sufficient to identify the act constituting the offense, and is not demurrable for defect in the description.

ID.—VENUE OF OFFENSE—CATTLE DRIVEN FROM COUNTY.—Where the offense is charged in the information as having been completed in the county, and there is evidence tending to sustain the charge, the fact that the cattle were proved to have been driven out of the county by the defendant, is immaterial, and cannot be considered upon demurrer to the information.

ID.—EVIDENCE—WITHDRAWING WITNESS TO CONNECT TESTIMONY.—It is proper practice to permit a witness to be withdrawn, in order to lay a foundation for the admissibility of his testimony.

ID.—DECLARATIONS OF DEFENDANT.—Testimony, the object of which is to prove declarations of the defendant in his own favor, is not admissible.

ID.—IMPEACHMENT OF WITNESS—CONVERSATION WITH DISTRICT ATTORNEY.—Where a brother of the defendant, who had been arrested, charged with the same larceny and discharged without examination, was called as a witness for the defendant, the district attorney may, on cross-examination, ask him relative to a conversation had between the witness and himself for the purpose of impeaching him, and testing his credibility.

ID.—IMPEACHMENT OF DEFENDANT—GENERAL REPUTATION.—Where the defendant offers himself as a witness, he may be impeached by proof that his general reputation for truth, honesty, and integrity is bad.

ID.—INSTRUCTIONS—GRAND LARCENY—STEALING OF CATTLE—GUILT OF DEFENDANT.—Where the court gave proper instructions to the jury as to

grand larceny in the felonious stealing of a cow, steer, bull, calf, etc., and then instructed them that as there is no evidence of anything other than calves, cows, steers, and bulls having been taken, they would not be at liberty to find the defendant guilty of petit larceny, but their verdict must be guilty of grand larceny, if they should believe from the evidence, beyond a reasonable doubt and to a moral certainty, that the defendant, as charged in the information, did steal, feloniously, a cow, steer, bull, or calf; or, if they should upon this proposition have a reasonable doubt of the guilt of the defendant, their verdict should be not guilty; it cannot properly be urged that the court instructed the jury to find the defendant guilty of grand larceny.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. E. C. Hart, Judge.

The facts are stated in the opinion of the court.

J. C. Ball, and W. R. Jacobs, for Appellant.

W. F. Fitzgerald, Attorney General, and Charles H. Jackson, Deputy Attorney General, for Respondent.

SEARLS, C.—This is an appeal by the defendant from a judgment of conviction of grand larceny and from an order denying his motion for a new trial. The defendant was prosecuted by information filed by the district attorney in the county of Yolo, on the 14th of April, 1897. The following excerpt from the information will serve to illustrate the objections urged against its sufficiency:

"The said Frank Prather did, on or about the eighth day of March, 1897, in the county of Yolo, state of California, then and there being, willfully, unlawfully, and feloniously steal, take, and drive away certain cattle, being cows and steers, the personal property of the estate of James G. Fair, deceased, said property being then and there of the aggregate value of seven hundred and eighty dollars," etc.

A motion was made to set aside the information, but, as the grounds upon which it is based are not made to appear of record or otherwise, the ruling of the court does not call for comment. A demurrer was interposed to the information upon the statutory grounds prescribed by section 1004 of the Penal Code. The

demurrer was disallowed by the court, and the ruling is assigned as error.

The contention of appellant is that the information is too indefinite, in that the property alleged to have been feloniously taken could not have belonged to the estate of James G. Fair, deceased. It is true that, technically speaking, the personal property of James G. Fair, at his death, descended to his heirs or legatees, subject to the possession and a special property in his executors or administrators for the purposes of administration.

At common law, the ownership in such cases might be averred to be in the heir at law, if in possession, or in the ordinary before proof of the will, or in the executor or administrator after their appointment. But to aver ownership in a deceased person or in an estate was fatal. A like rule prevailed in this state prior to the adoption of our Penal Code. (*People v. Hall*, 19 Cal. 425.)

The question then is, Has the code wrought such a change as to the allegation of ownership as to render this error now unimportant? Section 956 of the Penal Code provides that: "When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

In *People v. Leong Quong*, 60 Cal. 107, which was a case of grand larceny, the court said: "The name of the owner of property stolen is not a material part of the offense charged. It is only required to identify the transaction, so that the defendant, by proper plea, may protect himself against another prosecution for the same offense."

In *People v. Smith*, 112 Cal. 333, which was a case of larceny, the complaint charged the defendant with stealing property belonging to the estate of W. C. Elledge, deceased. The information alleged ownership in Joseph Elledge and Mrs. M. J. Elledge, as executor and administratrix of the estate of W. C. Elledge, deceased, and it was held by this court that "there was no substantial variance in the offense, as charged in the complaint and in the information"; that "in each the offense was described with sufficient certainty to identify the act, and the alleged ownership was in effect the same, namely, in the estate of W. C. Elledge, deceased."

In common parlance, we speak of property as belonging to the estates of deceased persons. We assess them as such for the purposes of taxation, and in various ways recognize property as belonging to such estates, and under section 957 of the Penal Code, "The words used in an indictment or information are construed in their usual acceptance in common language, except such words and phrases as are defined by law." The act of the defendant constituting the offense is clearly and distinctly set forth in ordinary and concise language, and it is not within the bounds of reasonable probability that he was or could have been misled or in anywise jeopardized by the designation of the property as belonging to the estate of Fair rather than to his executors or administrators.

"No indictment or information is insufficient . . . . which does not tend to the prejudice of a substantial right of the defendant upon its merits." (Pen. Code, sec. 960. See, also, Pen. Code, sec. 1404.)

It is also objected that the offense charged, if committed at all, was begun in the county of Yolo and consummated in the county of Colusa, and that these facts should have been stated in the information. As nothing of this sort appeared on the face of the information, it was no cause for demurrer or motion to set aside the information. It may be remarked that the larceny is charged, and the evidence tended to show, that the offense was completed in the county of Yolo, and it was sufficient to so charge.

It is true that the evidence showed that the stock was driven to the county of Colusa. Had the information been filed in the latter county, the question sought to be raised by appellant would have been involved, but it has no application here. The demurrer was properly overruled.

It is next urged that the court erred in refusing to strike out the testimony of Asa Morris, a witness for respondent. This witness had testified that about the 1st of March, the date not being remembered, but as he thought one week more or less before he heard of defendant's arrest, he met the latter in McGriff or Griffins' lane, a narrow and muddy lane in the vicinity of Knights Landing, and asked him, "What he was doing down there in the mud?" To which defendant answered that "he was

looking after some cattle for Doug. McGriff." The prosecution then withdrew the witness, with a view, as appears, of offering other testimony as to dates, etc.

The court, in refusing to strike out the testimony, stated that it desired to give the district attorney an opportunity to connect the transaction.

The testimony of J. J. Ely and others subsequently taken indicated that it must have been about the 8th or 9th of March that defendant met Asa Morris, and thereupon the court held the testimony of Morris admissible. In this there was no error. The testimony was of little importance, but was admissible for what it was worth. Nothing is more common than to permit a witness to be withdrawn in order to lay the proper foundation for the admissibility of his testimony, and it is as proper as common. The evidence showed without contradiction that defendant drove the cattle alleged to have been stolen from near the Fair ranch in Yolo county to a ranch owned or claimed by his (defendant's) father, some six or eight miles west of Arbuckle in Colusa county.

A brother of defendant had been up to this ranch with provisions, and when on his return and on the eleventh day of March met the defendant, just west of Arbuckle, driving about thirty head of cattle, and had a conversation with him. Defendant's counsel then sought to prove by their witness what the conversation was. The testimony was objected to and the objection sustained. The evident object was to prove the declarations of the defendant in his own favor. We think the court was correct when, in ruling on the question, it spoke of it as "a self-serving statement and not admissible."

Edward Prather, a brother of the defendant, was called as a witness on behalf of the latter, and testified in substance that in February and March he was on his father's ranch, west of Arbuckle, taking care of the latter's cattle. That some of their cattle had wandered away, and that he wrote a letter to his family apprising them of the fact, and that some of Fowler's cattle, whose ranch adjoined, had also disappeared, and asked them to look out for them at Knights Landing, from whence the Prather cattle had been driven in January, 1897. That on the 11th of March, 1897, the defendant arrived at the ranch with some

twenty-five or thirty head of cattle, four of which belonged to them (his father), and supposing the others were the Fowler cattle, or stock being ranched by the latter, they turned them over on the Fowler premises. On cross-examination the district attorney, for the purpose of impeaching the witness, was permitted, against the objection of defendant, to ask the witness various questions, among which were:

1. Did you not tell me that you did not know the stock was on that place for several days after it was brought there? 2. Didn't you say, I am innocent; I didn't know that stock was upon that place for several days; I did not see Frank (the defendant) at all? 3. Did you tell me that you told a falsehood to Linton about these cattle upon this place? 4. Did you explain to me that you told this falsehood because no man could expect me to convict my brother?

It appeared that the witness had been arrested charged with the same larceny, and that this conversation was had in a room in the courthouse near the jail, and that the witness had been discharged without an examination. These questions and some others of like tenor were proper as tests of the credibility of the witness. The cases of *People v. Greening*, 102 Cal. 384, *People v. Dilwood*, 94 Cal. 89, and others cited by appellant on the question, are not in point. (Code Civ. Proc., sec. 2052.)

There are some other objections made to the rulings of the court upon the admission of evidence, but they are not, with a single exception, of sufficient importance to call for comment. The exception to which we allude is this: The defendant was a witness in his own behalf and gave testimony vital to his defense. In rebuttal, the prosecution introduced as a witness one B. S. J. Hiatt, to whom the following question was put: "Q. Do you know the general reputation of Frank Prather [the defendant] for truth, honesty, and integrity, in the community where he lives?" Counsel for defendant objected to the question as irrelevant, immaterial, and incompetent. It seemed to be conceded by defendant's counsel that the truth and veracity of defendant were proper subjects of inquiry, but that other traits were not properly in issue. The objection was overruled, and in conclusion the witness said: "Well, it is bad."

Counsel for appellant urge with earnestness and zeal that tes-

timony as to the honesty of defendant was inadmissible, and that for that error the judgment should be reversed. In support of their contention they cite the case of *State v. Marks,* decided by the supreme court of Utah, February 4, 1898, and reported in 51 Pac. Rep. 1089.

That case is not in all respects precisely in point with the case at bar, for the reason that there the question put to the witness was: "Do you know the reputation of the defendant in that community for truth, honesty, and integrity," while here the question was, do you know the general reputation, etc.

The court, however, after disposing of the first question in favor of the appellant, proceeded to say that the character of the defendant for honesty was not in issue, and that the question should have been confined to the general reputation of the defendant for truth and veracity, and hence that the court below erred, for which error a reversal was had. This case certainly sustains the contention of the appellant here. Section 2052 of our Code of Civil Procedure is in part as follows: "A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty, and integrity is bad."

This being a statutory provision may well be held to enlarge the scope of impeaching testimony.

"The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this code." (Pen. Code, sec. 1102.)

We shall not discuss the question at large, for the reason that this court has foreclosed it in this state. In *People v. Hickman,* 113 Cal. 80, which is directly in point, it was held that just such a question as that propounded here, and put under like circumstances, was proper. (Citing *People v. Beck,* 58 Cal. 212; *People v. Bentley,* 77 Cal. 7; 11 Am. St. Rep. 225.)

Appellant contends that the court, by the second instruction given on behalf of the prosecution, instructed the jury to find the defendant guilty of grand larceny. To reach this result counsel for appellant eliminates from the second instruction all that portion qualifying the language to which he objects. In the first instruction the court had fully explained to the jury the distinction between grand and petit larceny, and had ex-

plained to them that the felonious stealing, etc., of "a cow, steer, bull, calf," etc., is grand larceny. (Pen. Code, sec. 487.)

The second instruction in its entirety is as follows:

"2. It will be noticed from this definition of grand larceny that every felonious stealing, taking, and driving away of cows, steers, bulls, and calves is grand larceny, regardless of the value of the property taken, and in this case, as there is no evidence of anything other than calves, cows, steers, and bulls having been taken, you would not be at liberty to find the defendant guilty of petit larceny, but your verdict must be guilty of grand larceny, if you should believe from the evidence beyond a reasonable doubt, and to a moral certainty, that the defendant, as charged in the information, did steal, feloniously, a cow, steer, bull, or calf; or if you should, upon this proposition have a reasonable doubt of the guilt of the defendant, your verdict should be not guilty."

The language of the instruction taken as a whole refutes the position of appellant. The thirtieth instruction asked by defendant was refused, "because given elsewhere by the court." It was in all essential particulars covered by the instructions given at the request of defendant in numbers 31, 32, 33, 34. These instructions are too lengthy to be copied. They are found at pages 134 and 135 of the transcript. There are some minor points made by appellant, but the foregoing are all that it is deemed necessary to notice. The instructions were very lengthy, and those given placed the law of the case fairly and plainly before the jury.

Upon a patient review of the record, we are of opinion the judgment and order appealed from should be affirmed, and we so recommend.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Temple, J., McFarland, J., Henshaw, J.