## STATE v. VINCENT.

1.  The affidavit of a defendant, convicted of larceny, while a codefendant was acquitted, filed in support of a motion for a new trial, stated that the evidence was substantially the same against both defendants, and that the verdict was the result of a compromise to acquit the other defendant and recommend a light sentence for affiant, which recommendation was returned with the verdict. Defendant's attorney filed an affidavit as to having overheard a conversation between several of the jurors as to whether they should agree to a proposition to convict defendant in consideration that all the jurors should sign a request for a light sentence and pardon, and the acquittal of the other defendant. Three jurors filed counter affidavits, stating that the verdict was not the result of a compromise. Comp. Laws, § 7450, authorizes a new trial when a verdict had been obtained by lot, or means other than a fair expression of opinion by the jury. Held not error to deny a new trial; the counter affidavits being, in effect, a denial of the charge of misconduct.

2.  The foreman of a ranch, having full charge and control of the interests of the owner, has a sufficient interest in stock on the ranch to support an indictment for larceny of the stock which alleges that he is the owner thereof.

3.  Under Comp. Laws, § 7246, providing that where an offense involving the commission of, or an attempt to commit, a private injury, is described with sufficient certainty in other respects to identify the act, an erroneous allegation of the person injured is immaterial, an indictment for larceny is not insufficient, in failing to properly state the owner of the stolen property, if it is sufficient to apprise defendant of the offense of which he is charged.

4.  Where the jury is instructed in a criminal case that they cannot convict unless they are satisfied of defendant's guilt beyond a reasonable doubt, from all the evidence, and the question whether certain confessions are voluntary is submitted, the failure to instruct that the confessions must be proven beyond reasonable doubt to be voluntary is not erroneous.

(Opinion filed July 2, 1902)

Error to circuit court, Charles Mix. county. Hon. E. G. SMITH, Judge.

William Vincent was convicted of grand larceny, and brings error. Affirmed.

*G. P. Harben*, for plaintiff in error.

*A. W. Burtt*, Att'y Gen., *James H. Exon* State's Att'y, and *French & Orvis*, for the state.

CORSON, J. An information was filed by the state's attorney of Charles Mix county, charging the plaintiff in error, together with Cyrus House and D. M. Wilcox, with the commission of the crime of grand larceny by stealing 29 head of live stock described in the information, and alleging that said live stock was the property of one D. N. Murphy, and was then and there in the possession and under the control of said Murphy. The plaintiff in error was convicted of the crime charged, and Cyrus House, jointly tried with him, was acquitted. The errors assigned are: (1) Misconduct of the jury; (2) error of the court in overruling the motion of the plaintiff in error to strike out the evidence of D. N. Murphy as to the ownership of the property; (3) that the court erred in its instructions to the jury; (4) that the court erred in refusing to give a certain instruction to the jury requested by the plaintiff in error.

A motion for new trial was made and one of the grounds upon which the same was based was that the jury was guilty of misconduct while deliberating upon their verdict by which a compromise verdict was returned finding the plaintiff in error guilty, and by reason thereof a fair and due consideration of his case was prevented. In support of this motion an affidavit was filed, by the plaintiff in error, in which he states, in sub-

stance, that the evidence in said case, as against C. L. House and the affiant, was identically the same; that the said House was acquitted and the plaintiff in error convicted. Affiant further states that the verdict of·said jury was not obtained by a careful weighing of the testimony, nor by any legal means, but was directly the result of a compromise between seven of the jurors who favored acquittal as to both of the defendants and five who favored the conviction of both; that the said jury were in continuous session for 30 hours, and that just prior to the finding of said verdict the jury stood seven for acquittal as to both of the defendants and five for conviction as to both; and the said jurors then agreed between themselves that they would report a verdict of not guilty as to House and a verdict of guilty as to the plaintiff in error, for the reason that the affiant had sufficient financial means so that the verdict could be set aside as to him, while said House had not sufficient means to defend his case; and it was further agreed that the said jurors would petition the court to make the sentence as light as the law would permit, and that they would sign a petition to the board of pardons and the governor of the state asking for the pardon of affiant. G. P. Harben, attorney for the plaintiff in error, also made an affidavit, in which he states that after the jury had been out for more than 12 hours, and while three of such jurors were separated from the other nine, he overheard two of such jurors discussing the question as to whether they should accept a proposition which had been made by some of the other jurors that they should find the plaintiff in error guilty and House not guilty, provided that the entire jury would sign a petition to the judge to make the sentence as light as possible, and also that the jury join in a peti-

tion for his pardon.    Mr. Harben further states in his affidavit
that after such verdict was returned the jurymen of whom he
had spoken were interrogated by the affiant as to how they
arrived at said verdict, and they stated that they had compro-
mised the matter as above stated, it being their opinion that
they had to agree one way or the other in order to be dis-
charged by the court.    The record discloses that accompanying
the verdict was a petition signed by the jurors asking the court
to inflict the least penalty possible under the statute, and the
same was ordered filed with the verdict.    The evidence offered
on the part of the state in opposition were the affidavits of
three of the jurymen, each of whom stated that the verdict was
fairly and honestly determined after reviewing the testimony
and a general discussion of the same, and was not the result of
a compromise.    The court below denied the motion for a new
trial, and its ruling is assigned as the first ground of error.

It is contended on the part of the plaintiff in error that the
facts stated in his affidavit were not denied, and that the affi-
davits on the part of the state only state generally that the
verdict was not the result of a compromise, and that the case
was fairly and honestly determined after reviewing the testi-
mony with a general discussion of the same; that in the ab-
sence of such specific denial of the facts set out by the plaintiff
in error in his affidavit they must, for the purpose of this case,
be taken as true, and that, if true, they disclose such miscon-
duct on the part of the jury as entitled the plaintiff in error to
a new trial. · Section 7450, Comp. Laws, provides, "The court
in which a trial has been had upon an issue of fact, has power
to grant a new trial, when a verdict has been rendered against
the defendant by which his substantial rights have been prej-

° 16 S. D.—5

udiced, upon his application in the following cases only: (4) When the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of the jurors." But while the three jurors whose affidavits were read, if they did not in terms deny the alleged compromise set out by the plaintiff in error, do in effect deny them by stating that their verdict was fairly and honestly determined, and was not the result of a compromise. It will be noticed that the statute above quoted provides that a new trial may be granted "when the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of the jurors," and the substantial rights of the party have been prejudiced. The only evidence that the case was not decided by fair expression of opinion on the part of the jury is the statement of the plaintiff in error. It is true that the affidavit of Mr. Harben and the return with the verdict of the petition have some tendency to support the affidavit of the plaintiff in error. But as opposed to the statement of plaintiff in error is the strong presumption indulged in by courts that jurors have performed their duty fairly and impartially, and this presumption is strengthened by the statements of the jurors whose affidavits were presented. The learned circuit court, which tried the case, and was necessarily familiar with all the facts in the case, has found against the plaintiff in error, and we cannot say the court's finding is not sustained by the evidence.

As above stated, the property alleged to have been stolen was charged in the information to be the property of one D. N. Murphy, employed by the South Dakota Cattle Company as its foreman to look after the herd of cattle owned by said company in this state. The authority of said Murphy is shown by

a letter written in December, 1899, in which the company, by its secretary and treasurer, wrote to said Murphy as follows: "I have just handed your letter of December 26th by Mr. Weber in reply to one he wrote you, and I have asked him to answer it by instructing you to go to the ranch and take absolute charge and control of it and every interest of the South Dakota Cattle Company as our foreman there." The writer then proceeded to give Mr. Murphy full instructions as to the management of the ranch, cattle, etc., and then says: "Mr. Montgomery; having resigned as general manager of the South Dakota Cattle Co., will exercise no further authority or control there, and on Mr. Hunter and Weber's recommendation the whole matter of protecting and looking after our interest is wholly with you, in the belief that we will find you competent and faithful to every trust." Mr. Murphy had no interest in or lien upon the cattle, and was paid by the month for his services as said foreman. At the close of Mr. Murphy's evidence a motion was made on the part of the plaintiff in error to strike out the same for the reason that it was not shown that he had any special interest in the property, and that it appeared from the evidence that he was simply the servant of the company, and that his possession of the property was the possession of the corporation. It is contended on the part of the plaintiff in error that there was a variance between the proof and the allegation of the information in respect to the ownership of the property; that, to constitute the crime of larceny, the name of the owner of the stolen property must be alleged if known. If not known, it must be so stated in the information. It is contended that the proof in this case clearly shows that Murphy only had temporary custody of the prop-

erty as foreman, and that his possession was the possession of the corporation. It is conceded by the learned counsel for the plaintiff in error that a special ownership may exist in one who has actual control and management of the property in whom ownership may be alleged, though he may have no in-terest therein, except servants having only the temporary cus-tody or care of the property, the possession of the servant be-ing the possession of the owner. This is undoubtedly the cor-rect statement of the rule governing this class of cases, and the only question therefore is, did Murphy occupy the position of mere servant of the company, or did he have such possession and control of the property of the company as might make him a special owner of the same as against trespassers or wrong-doers? Counsel for the state insist that the possession and custody of the property by Murphy was not that of a mere servant, but that by the terms of the letter from which we have quoted the property was placed especially in his charge as managing agent of the company. We are inclined to take this view of Mr. Murphy's possession, and to hold that he was not a mere servant, but that he had such control and charge of the property as made him a special owner within the rule as established by the authorities. It is true that he had no special ownership in the cattle, either as bailee or in any other capacity, and it is quite clear that under the earlier decisions the conviction could not be sustained. The questions concern-ing the sort of possession or special property which a servant may have in the goods of his master was fully considered by the court of king's bench in England in Rex v. Deakin, 2 Leach, 862: "A stagecoach having been robbed of a box containing a variety of articles, it became material to determine whether

the goods so stolen could be laid as the property of the coach-man. The count in the indictment on which the case proceeded laid the property in the coachman. The box was delivered by the servant of a tradesman in London to the bookkeeper of the inn from which the coach was set off, who called it over amongst other things in the waybill, and delivered it to a por-ter, who put it into the coach; and the coachman drove the coach to a place about thirty-eight miles from London, during which journey the box was stolen from the coach by the pris-oners. The proprietors of the coach never called upon the coachman to make good any losses, except when they happened by his neglect, and for goods stolen privately from the coach they never expected any compensation from the driver. The jury having found the prisoners guilty, upon a case reserved, a majority of the judges were of the opinion that the property was well laid to be in the driver. HOTHAM, B., who delivered their opinion, said that the material question was whether the driver had the possession of the goods, or only the bare charge of them; but that the case was not open to that distinction, for although as against his employers, the masters of the coach, the mere driver can only have the bare charge of the property committed to him, and not the legal possession of it, which re-mains in the coachmaster, yet as against all the rest of the world he must be considered to have such a special property therein as will support a count charging them as his goods, for he has in fact the possession of and control over them, and they are intrusted to his custody and disposal during the journey; * * * that the law therefore, on an indictment against the driver of a stagecoach, on the prosecution of the proprietors, considers the driver to have the bare charge of the goods be-

longing to the coach; but on a charge against any other person, for taking them tortiously and feloniously out of the driver's custody, he must be considered as the possessor." 2 Russ. Crimes (9th Ed.) 293. The law as laid down in this case seems to have been generally followed in this country, In People v. Bennett, 37 N. Y. 117, 93 Am. Dec. 551, this question was exhaustively discussed by the chief justice, and he quotes from the opinion of Rex v. Deakin, supra, with approval, and sought to apply the doctrine therein laid down to the case then before the court. In that case the defendant was charged with the crime of larceny of certain hams alleged in one count of the indictment to be the property of the county of Courtland, and in another as the property of one Gates, who at the time of the larceny was the keeper of the county poorhouse, and had the custody and charge of the property there. The court held that it was clear that the hams stolen were the property of the county, and hence did not pass upon the question we are now considering. There was, however, an able opinion of Mr. Justice FULLERTON, taking the opposite view as to the ownership laid in the keeper of the county poorhouse. See Brooks v. People, 49 N. Y. 436, 10 Am. Rep. 398. The case of Ward v. People, 3 Hill, 395, well illustrates the doctrine of the courts upon this subject. In that case the prisoner was indicted and convicted for stealing property of one Flagg, averred in the indictment to be the property of Flagg. It in truth was the property of another, and Flagg himself had stolen it from the true owner. It was held by the supreme court of New York, and afterward affirmed by the court for the correction of errors, that the possession of the property in the thief was sufficient to make it the subject of larceny, and that the title might be

laid either in the owner or the thief. In Brooks v. People, supra, a case of robbery, PECKHAM, J., speaking for the court, uses the following language: "I see no objection in holding the law to be as declared in the coach-driver case—that the girl is the owner as against all tort feasors, but as between her and her father or master he had the possession and title." In the case of State v. Nelson, 11 Nev. 334, the supreme court of that state held that the property taken by the robbery of Wells, Fargo & Co.'s Express box, while being carried by the company in one of its coaches, was properly averred to be the property of one Brown, the driver of the coach. There seems to be no distinction between robbery and larceny as to the ownership of property. It would seem in the case at bar that the personal property of the South Dakota Cattle Company was placed in charge of Murphy as a special trust. His position was not that of an ordinary servant, for, as will have been observed, the property was placed especially in his care. While it is true that he had no such possession of the property as would entitle him to hold it against the company, he must be deemed the special owner thereof as against any person who could not show a better title thereto. 1 Whart. Cr. Law (9th Ed.) § 938, and cases cited. Com. v. Finn, 108 Mass. 466. See 12 Enc. Pl. & Prac. 967 and cases cited. We are of the opinion therefore that the learned circuit court committed no error in denying the motion to strike out Murphy's evidence.

But, independently of the rule above quoted, it is contended on the part of the state that this case is governed by section 7246, Comp. Laws, which reads as follows: "When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in

other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material." This section is identical with section 956 of the Penal Code of California on this subject, and has been construed by the court of that state as applying to larceny cases. People v. Prather, 120 Cal. 660, 53 Pac. 259; People v. Leong Quong, 60 Cal. 107; People v. Smith, 112 Cal. 333, 44 Pac. 663. In this case the offense seemed to be described with sufficient certainty so that it would be a bar to a subsequent prosecution for the same act, and sufficient to apprise the defendant of the particular offense with which he was charged. This being true, the case comes clearly within the statute. Martin v. Territory, 4 Okl. 105, 43 Pac. 1067.

It is further contended on the part of the plaintiff in error that the court erred in instructing the jury that the possession of the property recently stolen is presumptive evidence that the person in whose possession the same is found is the thief. Counsel for the plaintiff in error frankly admits that the instruction of the court contained a correct proposition of law, but contends that it did not apply to this case, for the reason that there was no evidence that either House or Vincent was ever in possession of the cattle. An examination of the record, however, satisfies us that the learned counsel is in error in his last statement. We are of the opinion that there is evidence, not only as disclosed by the amended abstract on the part of the state, but as shown in the abstract of the plaintiff in error, tending to prove such possession. In the view we take of the case, it will not be necessary to discuss further this alleged error.

It is further contended on the part of the plaintiff in error

that the question as to whether or not the two confessions introduced in evidence were proven to have been made voluntarily beyond a reasonable doubt should have been submitted to the jury as a separate question. But, in our opinion, the court committed no error in refusing to so instruct the jury. It appears from the charge of the court that it did instruct the jury that they must be satisfied beyond a reasonable doubt from all the evidence in the case that the defendants were guilty; otherwise they must acquit them. At the request of the plaintiff in error the question as to whether or not these confessions were voluntary was by the court submitted to the jury, and the proof in regard to the same was heard and passed upon by them. This practice seems to be sustained by the courts. Com. v. Preece, 140 Mass. 276, 5 N. E. 494; Com. v. Burrough, 162 Mass. 513, 39 N. E. 184; Burdge v. State, 53 Ohio St. 512, 42 N. E. 594. In such a case it would not seem necessary for the court to especially charge the jury that they must be satisfied beyond a reasonable doubt that the confessions were voluntary. It would be sufficient to charge the jury generally that they must be satisfied of the guilt of the accused beyond a reasonable doubt, and this would include proof of the voluntary character of the confessions, as well as the other evidence in the case.

Upon a careful review of the case we find no error in the record, and the judgment of the court below is affirmed.