[Crim. No. 1032.   Department Two.—February 3, 1904.]

THE PEOPLE, Respondent, v. E. J. NUNLEY, Appellant.

CRIMINAL LAW—GRAND LARCENY—OWNERSHIP OF STOLEN HORSE—VARIANCE.—Under an information charging grand larceny in stealing a horse alleged to be the property of one J. Suey Lung, proof that the horse belonged to a Chinese company, of which J. Suey Lung was the manager, and that he bought the stolen horse in his own name, and that he alone could sell the horse, does not show a material variance, but sufficiently sustains the allegation.

ID.—CERTAINTY IN DESCRIPTION OF OFFENSE—IDENTIFICATION OF ACT CHARGED.—Under section 956 of the Penal Code, which provides that "when an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material," the ownership of property stolen is sufficiently laid to identify the act charged, in one of several partners or joint owners who had the possession, management, and control thereof at the time of the larceny.

ID.—REQUESTED INSTRUCTION—REASONABLE DOUBT—BURDEN OF PROOF —OMISSION OF PART ELSEWHERE GIVEN.—An instruction requested by the defendant on the subject of reasonable doubt and burden of proof, in the language of Mr. Justice Shaw, in *Commonwealth* v. *Webster,* is not materially weakened because the part thereof on the subject of burden of proof is omitted as being elsewhere given and repeated in the charge of the court.

ID.—REQUESTS PROPERLY REFUSED.—Requested instructions which are unnecessary, argumentative, or an invasion of the province of the jury, or which are included fully in the charge of the court, are properly refused.

ID.—CIRCUMSTANCE POINTING TO GUILT—MOSS STAINS UPON COAT— KNOWLEDGE OF WITNESS.—Where one of the circumstances tending to point to the guilt of the defendant was that there were stains of green moss upon his coat, evidence of the arresting officer that green stains upon his coat were "moss stains" made by green moss, such as grows on the bark of trees, purports to be of a fact derived from the knowledge or perception of the witness, and was admissible.

ID.—POSSESSION OF STOLEN HORSE—CIRCUMSTANTIAL EVIDENCE—SUPPORT OF VERDICT.—Where the possession of the stolen horse by the defendant was indicated only by circumstantial evidence tending to show that during the night of the theft he was leading the horse in a direction away from where it was taken, and which satisfied the jury of that fact, their verdict is not contrary to the evidence, because no witness testified to seeing the defendant in actual possession of the horse, nor because it was turned loose before it was found.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. W. B. Nutter, Judge.

The facts are stated in the opinion.

A. V. Scanlan, and J. F. Ramage, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, C. W. Norton, District Attorney of San Joaquin County, George F. McNoble, Assistant, and J. J. Fitzgerald, Deputy, for Respondent.

CHIPMAN, C.—Defendant was convicted of the crime of grand larceny, the information alleging that he stole a horse, the property of J. Suey Lung.

1. The principal question arising on the appeal is, that there is a fatal variance between the proofs and the information as to the ownership of the horse.   There is evidence that the horse was one of several belonging to a company of Chinese known as Hop Fong Company; that this company was composed of some twenty men and some women, and was divided into twenty-three shares, of which J. Suey Lung owned two, a mercantile company in San Francisco, known as Fook Wah, held three or four shares, others owned one share each, and one or more a half share.   The company was a partnership, and leased and cultivated land for a garden.   The alleged owner of the stolen horse, J. Suey Lung, was not only one of the partners, but was the "boss man" of the company, or its manager; he made the lease with the owner of the land; employed and discharged the men working there; bought the horses required and sold horses not needed; bought all the supplies required by the company; sold the products of the gardens; deposited the company money in bank, sometimes in his own name and sometimes in the company's name, and likewise drew it out in his own or the company's name; he bought the stolen horse as others in his own name; he kept the horses in the barn of the company, and testified that no one had a right to take the horse in question out of the barn without his consent, and that he could sell the horse, but no one else—none of the other men on the ranch, the partners—could sell the horse, and that he alone could sell the horse.   He also testified to the name of some of the partners or shareholders, but did not know the names of all or who they were, and that he was the only manager.

Section 956 of the Penal Code is as follows: "When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."   In the case of *People* v. *Edwards,* 59 Cal. 359, the crime charged was the burglarious entry of "the store of one S. Loupe," and the proof was, that the store belonged to S. Loupe, L. Loupe, and A. Haas, partners doing business therein.   It was pointed out in the opinion that at common law the ownership of property upon which an offense was committed was an essential averment in an indictment, and must be

proved as alleged, and that if stolen goods were the property of partners or joint owners, the names of all the partners or joint owners had to be stated if known; if not known, then it was necessary to state it to be the property of one, naming him, and of others unknown. Attention is called to a statute passed by Parliament to relieve criminal proceedings from embarrassments arising under this rule, and our statute (Pen. Code, sec. 956) is cited. It was then said: "The defendants having been charged with having entered a store of a certain person with intent to commit larceny, the act or intent were both alleged with sufficient precision and certainty to constitute the offense, and to enable the defendants to understand the accusation made against them. . . It is true that the additional fact was elicited that other persons were interested with the party named in the information as owner of the store which had been broken into and entered; but if that fact had been recited in the information, it would not have identified the offense with any greater certainty, or enabled the defendants to understand more clearly the offense with which they were charged. It only showed that there was a partially erroneous description or allegation of ownership of the store in which they committed the offense; . . . the variance was immaterial." *People* v. *Leong Quong,* 60 Cal. 107, was larceny of a horse alleged to belong to one Sang Hop. At the trial the owner testified that Sang Hop was his business name, and his personal name was Yup Chin. It was said: "The name of the owner of stolen property is not a material part of the offense charged. It is only required to identify the transaction, so that the defendant, by proper plea, may protect himself against another prosecution for the same offense." As to the purpose of section 956 of the Penal Code, see *People* v. *Watson,* 72 Cal. 402. (See, also, *People* v. *Betancourt,* 74 Cal. 188, similar to *People* v. *Edwards,* 59 Cal. 359; also, *People* v. *Anderson,* 80 Cal. 205.) In *People* v. *Ribolsi,* 89 Cal. 492, the information charged that the stolen goods were the "personal property of the estate of George H. Tay and Oscar Backus, copartners, . . . under the firm name and style of Geo. H. Tay & Co." It appeared that one of the partners was dead, and that his estate was represented by executors who were the legal owners of the property, and a fatal variance was claimed by reason of these facts. It was held under

section 956 that the description left no doubt as to the identity
of the act charged to have been committed, and was sufficient.
(See this section applied to the fact in *People* v. *Smith,* 112
Cal. 333, and *People* v. *Prather,* 120 Cal. 660, where the state-
ment above quoted from *People* v. *Leong Quong,* 60 Cal. 107,
is repeated approvingly.)    Where the crime of arson is
charged, it has been held not necessary to prove who owned
the buildings if the defendant did not own them.    (*People* v.
*Davis,* 135 Cal. 162.)    It was said in *State* v. *Nelson,* 11 Nev.
339: ''The only thing essential in either case [larceny or rob-
bery] seems to be an averment which shall show conclusively
that the property does not belong to defendant.    And courts
have shown a disposition to allow any sort of interest in or
right to the custody of the property to be sufficient proof of
ownership.''    And the court expressed a willingness to go as
far as any respectable precedent would warrant, ''because the
protection of innocence can never by any possibility require
any strictness of proof on this point.''    In the case of *Mc-
Mullin* v. *State,* (Crim. App. of Tex.) 59 S. W. 891, the
alleged owner of the stolen sheep was one Prosser, who had
exclusive control, care, and management of the ranch and
hired hands, and the direction of matters generally upon the
ranch whence the sheep were taken, but he was not the owner
of the sheep.    It was held that ''this would constitute Prosser
in law the owner of a prosecution for theft.''    (See, also,
*Leadbetter* v. *State,* 35 Tex. Crim. Rep. 195.)    So held also
in South Dakota as to the foreman of a ranch, ''having full
charge and control of the interests of the owner.''    (*State*
v. *Vincent,* (S. D.) 91 N. W. 347.)    In this case the question
was fully considered, and a statute identical with our section
976 was before the court.    The supreme court of Arkansas held
the rule to be, that ''when the stolen property belongs to joint
owners, the ownership must be laid in all of them, unless it was
when stolen in the control and management of one of them;
in which case the ownership may be laid in him.''    (*State* v.
*Scott,* 42 Ark. 73.)    In *State* v. *Wilson,* 6 Or. 428, the court
upheld an instruction couched in much the same terms as the
instruction No. 38 given in the present case, and to which
defendant takes exception.    The instruction here given was,
that if the jury found that the horse belonged to a partner-
ship, and that others were part owners with J. Suey Lung,

"and it also appears from the evidence that J. Suey Lung by the consent and agreement of the other said partners, or said part owners, had possession, control, and management of said horse at the time of the alleged larceny . . . such proof will sustain the allegation of ownership in said J. Suey Lung." Under section 956 of the Penal Code, and in view of the decisions referred to and the facts disclosed, we think the instruction correct.

2. Defendant asked for an instruction upon the doctrine of reasonable doubt in the language used in *Commonwealth* v. *Webster*, 5 Cush. 295, by Mr. Justice Shaw. The court gave a portion of the instruction, but omitted that part relating to the burden of proof, because elsewhere fully given and repeated. The essential feature of the definition was given, and it was not destroyed or materially weakened by separating from it and giving elsewhere the rule as to the burden of proof.

3. Defendant asked an instruction prefaced with the maxim that "it is better that many guilty persons should escape than one innocent person should suffer," and followed by a statement of the danger of "destroying liberty upon evidence that does not produce conviction," and that "where there is a reasonable doubt as to the defendant's guilt, the jury have a right to consider that innocent men have been convicted." (Citing *People* v. *Travers*, 88 Cal. 237.) The instruction held erroneous in that case stated to the jury that "while it is true that innocent persons have been convicted in the past, there is no proof in this case of any such fact, and you are not justified in considering such matters in determining the guilt or innocence of the defendant." The court said that this was error, because "the jury had the right to consider that innocent men have been convicted." There is a wide difference between instructing a jury as was done in the Travers case and in refusing to instruct at all on this point. In the one case the jury are forbidden to consider what it is their clear right to consider, while in the other the jury are left to consider, free from any instruction, what is within the knowledge and experience of most men. Full instructions upon the doctrine of reasonable doubt, the presumption of innocence, the rule as to the preponderance of the evidence, and other principles found in the record left no necessity for such an instruction as the one referred to. Furthermore, in the Travers case the court

held the instruction objectionable, as argumentative and an invasion of the province of the jury. The instruction here would be amenable to the same objection.

4. An instruction was asked by defendant and refused upon the rule as to the preponderance of the evidence in the course of which the doctrine of reasonable doubt is repeated. The court elsewhere instructed fully on these points.

5. Defendant asked that the jury be instructed to entirely disregard and not consider the robe, neck-halter, and strap found in the possession of defendant at the time of his arrest. There was some evidence concerning these articles, and if it did not appear, as claimed by defendant, that the articles were taken from the vicinity of the alleged crime, or used in its commission, the evidence was before the jury, admitted as relevant, and it was for the jury to judge of its weight. Under the circumstances disclosed, the instruction would have been an invasion of the province of the jury. (Const., art. VI, sec. 19.)

6. Among the circumstances claimed by the prosecution to point to defendant's guilt were certain green stains upon defendant's coat when arrested. Witness Sheriff Sibley, the arresting officer, testified, against defendant's objection, that these stains were "moss stains," made by green moss such as grows on the bark of trees. It is not necessary to state all the facts which made this particular fact relevant, for the objection is not that the circumstance was immaterial, but that "A witness can testify of those facts only which he knows of his own knowledge; that is, which are derived from his own perceptions." (Code Civ. Proc., sec. 1845.) As we read the evidence, that is precisely what the witness testified to.

7. It is urged that the verdict is contrary to the law and the evidence for the reason that the horse "was not proved to have been, at any time, in the possession of the appellant." (Citing *People* v. *Hurley,* 60 Cal. 75.[1]) The case in hand was one where defendant's possession of the horse, if he had possession at all, was shown by circumstantial evidence. He was at no time seen in personal possession, but there were circumstances proven which tended to show that during the night of the theft he was leading the horse in a direction away from where it was taken. There was no evidence that any

[1] 44 Am. Rep. 55.

one saw defendant in actual possession. The horse had been turned loose by the person, who took it before it was found. But there was some evidence, which the jury thought sufficient, directly connecting defendant with the crime. Appellant does not point out wherein there is any failure of evidence except as above quoted. The only remaining point is an objection to an instruction involving the question of ownership of the horse, already disposed of.

The judgment and order should be affirmed.

Smith, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Lorigan, J., Henshaw, J.