[Crim. No. 662. Second Appellate District, Division One.—July 29, 1919.]

# THE PEOPLE, Respondent, v. MEYER DIAMONDSTEIN, Appellant.

[1] CRIMINAL LAW—LARCENY—OWNERSHIP OF PROPERTY BY COUNTY— SUFFICIENCY OF INFORMATION.—An information charging the larceny of one electric motor, the property of "Ventura County, a political corporation in the State of California," is sufficient in its allegation as to the ownership of the property.

[2] ID.—OWNERSHIP OF PROPERTY—VARIANCE BETWEEN PLEADING AND PROOF IMMATERIAL.—In a prosecution for larceny, unless there is a material variance between the ownership charged and that proved, the manner in which such ownership is alleged is not important, further than to show that the property taken was not the property of a defendant charged with larceny.

[3] ID.—SUFFICIENCY OF EVIDENCE OF OWNERSHIP.—In this prosecution for the stealing of an electric motor used in raising water for the sprinkling of public roads, while the testimony of none of the witnesses in words was of the direct import that the motor charged to have been stolen belonged to the county of Ventura, there was testimony from which the jury was authorized to conclude that the ownership was as *charged.*

[4] ID. — GUILT OF DEFENDANT — SUFFICIENCY OF EVIDENCE. — In this prosecution for the stealing of an electric motor used in raising water for the sprinkling of public roads, from the facts that the accused took an active part in the sale of the motor and gave evidence at the time of such sale that he was interested in the proceeds, that he and his truck were seen in a neighboring city on the evening previous to such sale in company with another who later confessed to the commission of the crime, that his truck was employed transporting the stolen goods, and the other evidence in the case, the jury was justified in concluding that the defendant was a participant in the commission of the crime.

[5] ID.—PARTICIPATION BY DEFENDANT—INSTRUCTIONS.—In a prosecution for larceny, an instruction that if the jury should find that the defendant "feloniously" took the property described in the information, or aided or abetted in the taking of the property, they should find him guilty, does not constitute an instruction to the jury that the defendant should be convicted if he is shown to have been in possession of the stolen property after the commission of the alleged crime.

APPEAL from a judgment of the Superior Court of Ventura County, and from an order denying a new trial. Merle J. Rogers, Judge. Judgment and order affirmed.

The facts are stated in the opinion of the court.

Frank Dominguez and Paul W. Schenck for Appellant.

U. S. Webb, Attorney-General, Joseph L. Lewinsohn, Deputy Attorney-General, and Jerry H. Powell for Respondent.

JAMES, J.—Appellant was convicted of the crime of grand larceny, the particular charge being that he feloniously took and carried away one electric motor, the property of the county of Ventura, of the value of $75. He appeals from the judgment and from an order denying his motion for a new trial.

[1] It is first contended that the information was insufficient in its allegation as to the ownership of the property alleged to have been stolen. The language of the information was that the motor was the property of "Ventura County, a political corporation in the State of California." The contention of appellant under this head is that, as the Penal Code, section 484, defines larceny as "the felonious stealing, taking, carrying, leading, or driving away the personal property of another," it is not sufficient to show ownership in a county. As defined by section 7 of the Penal Code, the word "person" includes a corporation as well as a natural person. While the political subdivision of the state denominated a "county" is not in strictness a corporation, at the same time it requires no stretching of the plain intent of the criminal statute to say that it was designed to make punishable the stealing of personal property from any ownership whatsoever. Appellant's counsel argue that the ownership should have been alleged to be in the taxpayers of the county. If, indeed, it may be said that the taxpayers in their collective capacity do hold the ownership of property used in the conduct of the county government, then we may at once answer that the charging of such ownership as being in the county itself is no different from charging it in the manner suggested, for the term would then mean the same thing. We are only conceding for the sake of the argument that the taxpayers collectively may be said to own the county's property, but think that this is not true as a legal proposition—we think it is not more true that the ultimate ownership resides in the taxpayers than that it may

reside in the electorate. [2] Furthermore, unless there is a material variance between the ownership charged and that proved, the manner in which such ownership is alleged is not important, further than to show that the property taken was not the property of a defendant charged with larceny. Section 956 of the Penal Code provides that "when an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material." Respondent cites a case which is directly in point and in which this subject is given extended discussion, that being the case of *People* v. *Prather,* 120 Cal. 660, [53 Pac. 259].

[3] The second point made by appellant is that, conceding the allegation of ownership of the property to have been sufficiently made in the information, the evidence is insufficient to show that the ownership was so held; in other words, the claim of appellant is that there was no evidence tending to show that the property taken was the property of the county of Ventura. While the testimony of none of the witnesses in words was of the direct import that the motor charged to have been stolen belonged to the county of Ventura, there was testimony from which the jury was authorized to conclude, and naturally conclude, that the ownership was as charged. The motor alleged to have been stolen was a small electric machine which was installed at a crossroads in the county of Ventura, near the town of Oxnard, for the purpose of raising or handling water used for the sprinkling of the public roads. One Roussey, a supervisor of Ventura County, testified that he was supervisor of a certain district, which included a certain road district. He was asked what was the nature of the sprinkling system just north of the city of Oxnard during the month of September, 1918, and he replied: "Well, we had a sprinkling system there, some electric motors, some windmills and also one gas engine in my district. . . . We had one motor located just, I guess it is, thirty feet off the Saviers Road on the Gonzales Road, three-quarters of a mile north of the city limits of Oxnard. . . . Underneath the tank there was a little motor-house, a wooden house, and the motor was inside of that motor-house. . . . In the early part of September, I was

notified it was gone, and I went there to see and it was gone. The wires had been cut and the bolts unscrewed and the motor was removed." The witness Peckstein testified that in the month of September he was employed by the county of Ventura to sprinkle roads under Supervisor Roussey, and that a sprinkling system was in use and that electric motors were used; that one of these was located at what is known as the "Carr" corner; that he visited the motor-house nearly every day; that on the eleventh day of September, 1918, he found that the motor was gone. We point to this testimony as being sufficient to show that the motor which was removed from the motor-house at the place mentioned by the supervisor and the witness Peckstein was the property of the county of Ventura. It was not necessary that any witness should in words have declared the ownership to be in the county; the inevitable inference from the statements made by the witnesses referred to would lead to that conclusion.

[4] The next contention urged on behalf of appellant is that, admitting that the larceny was committed by someone, the evidence is insufficient to prove that the appellant was a participant in the commission of that crime. Under this contention it is, of course, our duty to consider the testimony introduced by the prosecution in its strongest light, disregarding evidence offered in defense, for if there was any substantial showing which tended to connect the defendant with the commission of the alleged crime, the jury's verdict would not be disturbed. The facts, in substance, as illustrated by such testimony, were these: On the eleventh day of September, 1918, the appellant, in company with a man named Silverstein, who was his brother-in-law, appeared at an electrical merchandising place in the city of Los Angeles. They had a motor truck which was being driven by the appellant. On this motor truck there were two electric motors, one of which admittedly was that described in the information as having been stolen from the county of Ventura. These motors were offered for sale, Silverstein doing most of the negotiating. One of the merchants to whom they applied offered $35 for the motors, and this appellant stated that they could get more for them at "Broils' Place," and the two men left. They later appeared at the store of one Falck, to whom they sold the two motors for $50. At this place Silverstein again did the

bargaining with the proprietor until the deal was concluded. A check was given in payment for the motors and the proprietor inquired as to whether he should O. K. the check or the indorsement, Silverstein stating that it was not necessary. At this juncture this appellant intervened and stated that it was advisable to have the check O. K'd, as he (the appellant) needed some money. Up to this point, then, we have a case presented where the appellant was found in possession of stolen property; that he was driving the truck upon which the same was loaded, and that he participated in negotiating the sale of the motors to the extent we have described. Other testimony showed that on the night previous appellant and his truck were seen in the city of Ventura, and that late in the evening he was seen to drive away through the streets of the city in company with Silverstein. A brief reference may be made to the testimony offered in defense. It was, in effect, that Silverstein, finding his brother-in-law in the city of Ventura on other business— that of collecting or transporting some junk—impressed him and his truck into service to convey the two motors to the city of Los Angeles to be sold. Silverstein, who had previously pleaded guilty to the charge, testified that he alone had stolen the motors, and that he had told appellant that he had obtained them from a sugar company at Oxnard. While it is true under our law that a defendant charged with larceny may not be convicted upon proof of possession of the stolen property alone, the jury had before it here other circumstances noted, that of appellant having taken an active part in the sale of the motors and giving evidence that he was interested in the proceeds. His presence in the city of Ventura and employment of his truck in the business of transporting stolen goods were all proper to be considered with all the attendant circumstances. And we think such facts and circumstances were sufficient to establish a good case for the prosecution. It is the unusual case, indeed, in which evidence is at hand to show that a thief found in possession of stolen property was also seen to actually abstract it. The prosecution necessarily in such cases must rely upon circumstances of a corroborative nature, large or small, to support the main incriminating fact.

Some complaint is made as to the instructions given by the court being improper and unfair to the defendant. It is first urged that the court failed to define the crime of

grand larceny and that the jury, therefore, had no standard by which to weigh the alleged case of appellant. The court did not give the code definition of larceny, but did give that portion of the code section showing the difference between grand and petit larceny. In so far as the particular property alleged in the information to have been stolen is concerned, there was no dispute, either that that property was actually stolen, or that its value was such as to make the crime grand larceny. This was proved by the defendant's witness Silverstein, who admitted that he had taken the motor from the place where it was installed, and that he was at the time of the trial under commitment to the Preston School of Industry after plea of guilty to a like charge. This witness endeavored to exculpate the appellant here by taking all blame upon himself. [5] Pursuing the argument further along the same line, appellant's counsel contend that the court, in effect, advised the jury that if the defendant was shown to have been in possession of the stolen property after the commission of the alleged crime, he should be convicted. The instruction carefully considered did not bear that import. The court's instruction was, referring to the taking, that if the jury found that appellant "feloniously" took the property described in the information, or aided or abetted in the taking of the property, the jury should find him guilty. The instruction upon the question of the possession of stolen property as an incriminating fact was full and fair. The instructions upon reasonable doubt were complete, as were also those referring to proof of circumstances relied upon by the prosecution. In fact, the entire charge, to our minds, was as complete and fair as the defendant was entitled to have given. No claim is made that in any of the instructions offered by the defendant and refused any essential advice was contained which was not included within the instructions as given.

We find no error entitling appellant to a judgment of reversal.

The judgment and order appealed from are affirmed.

Conrey, P. J., and Shaw, J., concurred.