THE STATE OF NEVADA, APPELLANT, *v.* EARL LEWIS STEWARD, RESPONDENT.

Nos. 4077 and 4087

March 14, 1958.                      323 P.2d 23

Grant Sawyer, District Attorney, Elko, and Harvey Dickerson, Attorney General, Carson City, for Appellant.

Williams and Mann, of Elko, for Respondent.

**OPINION**

By the Court, BADT, C. J.:

The state filed an information in Elko County under Nevada's "in transitu" statute, charging Steward with the crime of murder committed in the state while in a moving van traveling eastward in the state on a trip terminating in Elko County. The district court held the information to be fatally defective in not alleging that the crime was committed in Elko County, and the state

appealed. Steward seeks to sustain the district court's ruling on the ground that the in transitu statute violates the constitutional guaranty of a jury trial. We have concluded that the in transitu statute is not in contravention of the constitutional limitation.

Section 3 of Art. I of the Nevada constitution reads: "The right of trial by jury shall be secured to all and remain inviolate forever; * * *."

The statute referred to as the in transitu statute is NRS 171.040, reading as follows: "When an offense is committed in this state on board a vessel navigating a river, slough, lake or canal, or lying therein, in the prosecution of her voyage, the jurisdiction is in any county through which the vessel is navigated in the course of her voyage, or in the county where the voyage terminates; and when the offense is committed in this state on a railroad train, car, stage or other public conveyance, prosecuting its trip, the jurisdiction is in any county through which the train, car, stage or other public conveyance passes in the course of its trip, or in the county where the trip terminates."

The information charged: "That the said defendant, Earl Lewis Steward, did on or about the ninth day of September, 1957, in the State of Nevada, and before the filing of this Information, commit a felony, murder, as follows, to-wit: That the said defendant did then and there unlawfully, feloniously, and with malice aforethought, kill one Thomas R. Jessen, by shooting him in the head with a twenty-two calibre pistol. That said offense was committed by the said defendant while in a moving van prosecuting its trip eastward through the State of Nevada on U. S. Highway 50. That said trip terminated at a point in Elko County, Nevada, * * *."

Respondent contends that the inviolable constitutional rights of trial by jury were those existing at common law at the time of the adoption of the constitution. This court has indeed so held, State v. McClear, 11 Nev. 39; State v. O'Flaherty, 7 Nev. 153. But respondent insists further that one of such fundamental rights so secured was the right to be tried in the county (corresponding with the particular town, neighborhood, village, parish,

vicinage or visne, as referred to by the English writers) in which the crime occurred, and that this right is violated by the in transitu statute.

Although presented here for the first time in Nevada, the question has received the consideration of a number of the courts of the nation. We may first eliminate from consideration those cases in which the constitutional guaranty was of a jury trial *in the county or district* where the offense was committed. Such cases are illustrated by Woodward v. Petteway, 123 Fla. 892, 168 So. 806 (right of trial "in a county where the crime was committed") ; State v. McDonald, 109 Wis. 506, 85 N.W. 502, 506 (where the guaranty was of trial in any "county or district") ; State v. Reese, 112 Wash. 507, 192 P. 934, 11 A.L.R. 1018; Craig v. State, 50 Tenn. 227. See also Watt v. People, 126 Ill. 9, 18 N.E. 340, 1 L.R.A. 403. For authoritative precedent we must turn to those states whose respective constitutions correspond with our constitutional guaranty of trial by jury without reference to the venue. It is true that the Supreme Court of Michigan held that the right of trial by jury meant trial in the county where the offense was committed and thus held an in transitu statute unconstitutional. People v. Brock, 149 Mich. 464, 112 N.W. 1116. It relied on an earlier case, Swart v. Kimball, 43 Mich. 443, 5 N.W. 635, which held that one of the essentials of a jury trial was a trial in the county where the alleged offense was committed. It held that an act permitting prosecution for trespass on state land in a county other than that in which the lands were situated was void.

Venue statutes of various kinds, like in transitu statutes, have been from time to time attacked on precisely the same grounds as the attack on our in transitu statute, namely, that they violated one of the fundamental aspects of a constitutional guaranty of a jury trial, to wit, trial in the county where the offense was committed. Consideration of such venue statutes has been along identical lines of consideration of in transitu statutes. We may, therefore, be guided by precedent in the consideration of such venue statutes.

As introductory to such consideration we refer generally to the annotator's note at 11 A.L.R. 1021 to the effect that there would seem to be little doubt, in the absence of all constitutional limitation, that legislation fixing the venue of criminal prosecutions for offenses committed in or upon public conveyances in transitu in a county other than that in which the crime was actually committed would be valid, so that the question resolves itself into one of construction of the various constitutional provisions relating more or less directly to the venue of criminal prosecutions. We have already put aside as affording no precedent cases involving constitutions requiring the venue to be in the county in which the offense was committed.

In People v. Goodwin, 263 Ill. 99, 104 N.E. 1018, the court assumed the constitutionality of the in transitu statute without specifically deciding the point. In People v. Dowling, 84 N.Y. 478, 487, the court held that it was "in the power of the legislature" to enact the statute, although it made no other reference to its constitutionality. The court there said: "The legislature did not declare or define an offense not before known to the law. It permitted a place of trial of known offenses elsewhere than was lawful before the passage of the act. It was in the power of the legislature so to do." In Nash v. State, 2 G. Greene 286 (Iowa) ; People v. Hulse, 3 Hill 309 (New York) ; and Commonwealth v. Brown, 71 Pa. Super. Ct. 575, the statute was applied, but the question of its constitutionality was not referred to.

State v. Pace, 129 Conn. 570, 29 A.2d 755, 756, involved a statute providing that violation of the act could be prosecuted before any court of the state "in the same manner as if such offense had been committed within the territorial jurisdiction of such court." The court said: "Our constitution, unlike those of some states, contains no provisions restricting the place of trial of persons accused of crime  *  *  *. The right of one accused of crime to have a fair and impartial trial has been the basis of Anglo-Saxon criminal jurisdiction ever since Magna Carta. But that has never been regarded as

involving as a necessary element the requirement that in all cases an accused be tried within the county or other territorial jurisdiction within which the offense was committed." The court then refers to Blackstone's statement that accusations of murder might be tried by the king's special commission in any shire or place in England.

In People v. Hetenyi, 277 App. Div. 310, 98 N.Y.S.2d 990, affirmed 301 N.Y. 757, 95 N.E.2d 819, the court noted that the general rule requiring offenses to be tried in the county where committed, although recognized by the legislature, had been subjected to many exceptions by the legislature itself, noting specially the section of the code of criminal procedure where the exceptions had been accomplished. Particular reference was made to section 137 of the New York Criminal Procedure Code which is substantially the same as our in transitu statute.

It was definitely stated in State v. Lewis, 142 N.C. 626, 55 S.E. 600, 602, 7 L.R.A., N.S., 669, with reference to legislative power to place the venue in a county other than that in which the offense was committed: "The legislative power can be restrained only by constitutional provisions. It cannot be restricted and tied down with reference to the common law or statutory law of England. There is nothing in the common law or statutory law of England which is not subject to repeal by our Legislature, unless it has been re-enacted in some constitutional provision." To like effect are Ex Parte MacDonald, 20 Cal. App. 641, 129 P. 957, and People v. Dowling, 84 New York 478. See also People v. Martin, 188 Cal. 281, 205 P. 121, 21 A.L.R. 1399.

Respondent cites State v. Pray, 30 Nev. 206, 94 P. 218, 221, and State v. Chamberlain, 6 Nev. 257, for the proposition that the common law guaranty of trial by jury included the right to be tried in the county in which the offense was committed. Against this contention is the statement by the court in the Pray case, after recognizing that the common law prevails here: "The crime

of larceny was an exception to this rule, and by statutory enactment the rule has been modified with reference to certain other specified crimes." We do not consider the Chamberlain case in point. Nor do we find anything in the Eureka County Bank Habeas Corpus Cases, 35 Nev. 80, 126 P. 655, 129 P. 308, upon which respondent also relies, supporting the contention that venue may not be fixed by the legislature in a county other than that in which the offense was committed.

Respondent relies chiefly, however, on People v. Powell, 87 Cal. 348, 25 P. 481, 11, L.R.A. 75, which held, under a constitutional provision similar to our own, that a statute permitting a change of venue in a criminal case upon application of the state without the consent of the accused, on the ground that an impartial jury could not be obtained in the county where the crime was committed, was void. We might dispose of this case by limiting it to the particular kind of statute that it struck down, as described above. This would not be a satisfactory disposition in view of the court's learned discussions of the question, its historical review of the English common law guaranty of trial by jury and of its conclusion that trial in the county where the offense was committed is an essential and fundamental element of trial by jury, though not expressed in the constitution. Its definite holding to such effect, however, does not seem to have been followed in later California cases or to have received the approval of other courts. In People v. Prather, 120 Cal. 660, 53 P. 259, the Supreme Court of California affirmed a conviction under a statute providing that when property taken in one county by larceny has been brought into another, the jurisdiction of the offense is in either county. Although the opinion did not refer to People v. Powell, it was considered by the District Court of Appeals of California in People v. Richardson, 138 Cal.App. 404, 32 P.2d 433, 434, that the Prather case had impliedly "repudiated" the Powell case. In People v. Richardson the court was considering a penal code section which provided: "The jurisdiction

of a criminal action for escaping from prison is in any county of the state." It referred with approval to Ex Parte MacDonald, 20 Cal.App. 641, 129 P. 957, which upheld a statute providing that when bigamy was committed in one county and the defendant was apprehended in another, the jurisdiction was in either county, and which held that "if the statute guarantees the accused the right of trial by jury in the place by law designated as the place for trial, it confers upon him the right contemplated by the Constitution," and that since "under the Constitution, the place of trial is subject to legislative determination," authorities holding that the trial must be in the county where the offense was committed had no application. After a long and well considered examination of the subject matter, its history and development, the court concluded "that the real essential attributes of the so-called common law jury trial were at all times 'number, impartiality and unanimity'; that at the time that our Constitution was adopted the only right which the accused had under the common law of England with respect to the place from which the jury should be selected was a right to have the jury selected from the vicinage or county *which might be fixed by law for the place of trial;* * * *." (Italics supplied.)

In State v. Miles, 43 Idaho 46, 248 P. 442, the supreme court upheld a statute providing for a change of venue on application of the state. It rejected People v. Powell in the face of the more recent holding of Ex Parte MacDonald. The court stated that the great weight of authority was opposed to the rule announced in People v. Powell and relied upon Barry v. Traux, 13 N. Dak. 131, 99 N.W. 769, 65 L.R.A. 762, 112 Am.St.Rep. 662, upholding a similar statute permitting change of venue on application of the state in the face of a similar constitutional provision guaranteeing a jury trial.

Other cases are to like effect. In the annotation in 76 A.L.R. 1035 it is stated: "In the absence of any limitation by constitutional provision, it seems to be generally recognized that the power of a state legislature to fix the venue of criminal prosecutions in a county or

district other than that in which the crime was committed is unrestricted." Contra, where the constitution guarantees a trial by a jury of the county in which the offense has been committed.

Running through many of the cases cited above, we find many references to modification of the ancient common law rule of right of trial by jury in the vicinage or county by various statutes. These included trial elsewhere of charges of murder, treason, offenses against the "black act" (poaching), felonies committed out of the realm in destroying the king's ships and other offenses. Numerous examples also appear in statutes within the respective states approved by the courts, some of which we have described above. Not only was the common law of England with reference to venue materially modified by statute at the time of the adoption of our constitution but the same was, in the absence of constitutional prohibition, subject to the inherent right of the legislature to make modifications pertaining to place of trial. State v. Lewis, 142 N.C. 626, 55 S.E. 600, 7 L.R.A. (NS) 669.

The defendant attacked the information in the trial court on the ground that the allegation that the homicide had been committed in a "moving van" did not bring it within the purview of the statute. The defendant has filed a cross appeal assigning the court's ruling as error. We see no merit in this contention.

As the sole ground of support of the lower court's dismissal is the asserted unconstitutionality of the in transitu statute, and as we have concluded that such statute does not contravene the constitutional guaranty of a jury trial, the judgment is reversed and the case remanded for further proceedings. On respondent's cross appeal, the ruling and order of the court sustaining the sufficiency of the allegation that the homicide had occurred in a moving van is affirmed.

EATHER and MERRILL, JJ., concur.