[Crim. No. 961.   Third Appellate District.—February 17, 1927.]

## THE PEOPLE, Respondent, v. HARRY BARGALA, Appellant.

[1] CRIMINAL LAW—GRAND LARCENY—VERDICT—EVIDENCE—APPEAL. — In this prosecution for grand larceny, it cannot be said on appeal, as a matter of law, that the verdict of guilty was not sufficiently supported by the evidence.

[2] ID.—RULE OF REASONABLE DOUBT—APPLICATION OF BY JURY — APPEAL.—The rule that the evidence, to justify the conviction of a party charged with the commission of a public offense, must be such as to show his guilt beyond a reasonable doubt, is one which

---

2.  See 8 Cal. Jur. 582.

must be addressed to and applied by the jury trying the accused in their consideration of the evidence, and is not pertinent in the consideration of the case by the courts of appeal; and the latter courts never apply the rule of reasonable doubt in their consideration of the evidentiary features of criminal cases on appeal, although they are legally at liberty to hold, where the record justifies or requires it, that, as a matter of law, the evidence in a given case is insufficient to uphold the verdict.

(1) 17 C. J., p. 255, n. 53; 36 C. J., p. 921, n. 64.   (2) 17 C. J., p. 257, n. 68.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. W. A. Anderson, Judge.

The facts are stated in the opinion of the court.

Emanuel Hendricksen for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted in the superior court of Yolo County upon an information charging him with the crime of grand larceny, and he appeals to this court from the judgment of conviction and the order denying his motion for a new trial.

[1] The only point upon which the defendant relies for a reversal is that the evidence does not support the verdict.

The information states that, on or about the twenty-sixth day of August, 1926, in the county of Yolo, the defendant stole and carried away certain personal property, to wit: One hundred and fifty feet of "telephone toll cable, then and there of the value of $210 . . . and then and there the property of the Pacific Telephone and Telegraph Company." A prior conviction of burglary of the second degree, a felony, in the superior court of Amador County is also charged in the information. On his arraignment, the accused admitted the prior conviction charged in the information, and pleaded not guilty to the crime likewise charged against him.

As to the facts there is no dispute. It was shown that, in the month of August, 1926, the Pacific Telephone and Tele-

graph Company, a corporation, was engaged in erecting or installing, as a part of its telegraph and telephone line between the cities of Sacramento and San Francisco, a telegraph and telephone cable at a point known as "Mikon Tower," situated in Yolo County, a short distance from the city of Sacramento, and along and near the tracks of the Sacramento Northern Railroad Company. The cable is composed of a large number of wires and is inclosed in a leather casing. On the twenty-fifth day of August, 1926, the cable at the point mentioned above had been put in place on the poles, and in the evening of that day was observed by one of the employees of the company, who was then passing that point on a train of the Sacramento Northern Railroad, to be in place. On the following morning (August 26th), about 9 o'clock, it was discovered by the employees of the telephone company engaged in constructing the cable that approximately 150 feet of the cable at the point above indicated had been removed from the poles and taken away. An investigation followed, with the result that the material composing that part of the cable which had been removed was found at the Acme Junk Company's establishment, at 1916 Twentieth Street, Sacramento. The material consisted of 431 pounds of copper wire and 750 pounds of lead. M. Franzoni, buyer for said junk company, testified that, between the hours of 3 and 4 o'clock of the twenty-sixth day of August, 1926, the defendant and one Lon Yarnell appeared at the junk-shop mentioned in a passenger or touring car; that, while the defendant remained in the car, Yarnell got out of the car, went to where the witness was then standing and proposed to the latter the sale "of some copper wire and lead." Yarnell asked Franzoni what prices he was paying for such material, and the latter gave the former the prices he was paying. Yarnell agreed to the prices, and the copper wire and lead were then removed from the touring car in which Yarnell and defendant went to the junk-shop and was weighed. It had been cut into small pieces. Yarnell, defendant, and a man employed at the junk-shop removed the copper wire and lead from the car. After the material was weighed and so found to weigh something over 1100 pounds, Franzoni delivered to Yarnell a "ticket" entitling him to be paid at the office of the junk company the aggregate sum of $92.05. Franzoni testified

that he had known defendant for some time prior to the date of the transaction in question by the name of Moore. As above intimated, the copper wire and the lead sold by Yarnell to the Acme Junk Company was identified by employees of the telephone company as the wire and the lead taken from the cable above mentioned.

It appears that Yarnell had not been apprehended down to the time of the trial of Bargala.

The defendant did not testify at the trial. After his arrest, however, he was interviewed relative to the larceny by one Lydon, a special agent of the "Public Utilities Protective Bureau," whose business is that of investigating crimes committed against the properties of certain public utilities in this state, and in that interview, which was conducted by said agent in the presence of a detective of the Sacramento police department and a constable of Yolo County, the defendant made a statement as to the part he took in the transaction. Lydon testified that Bargala denied having been a party to the asportation of the cable, but admitted that he had been employed by one Jess Golightly on August 26, 1926, to haul, by means of his automobile, the material from a certain point on what is known as the Elkhorn road, in Yolo County, to the place of business of the Acme Junk Company, in Sacramento; that he was to receive from Golightly $25 for the service so performed; that, on the afternoon of the day named, accompanied by Golightly, he did haul the wire and lead from the Elkhorn road to said junk company's establishment in his passenger car; that, arriving at the junk-house Golightly negotiated the sale of the material to said company through Franzoni; that Golightly received from Franzoni a "ticket" for the total proceeds of the sale ($92.05), and that he (Golightly) handed the ticket to defendant, who thereupon went to the cashier's office of the junk company and presented it to the cashier, who delivered to him (defendant) the amount the ticket called for; that he (defendant) thereupon delivered to Golightly all the money but the sum of $25, which the latter agreed to pay defendant for his services in conveying the material to the junk company's place of business. Bargala stated to Lydon that he became acquainted with Golightly, who, it is practically admitted, is none other than the man known to Franzoni as "Lon Yarnell," in the "can," mean-

ing a county jail, wherein both were at the same time confined. He further likewise stated that, after the sale of the wire, etc., he went to the town of Broderick, Yolo County, from which place he immediately went to Stockton, where he took a room at the "Elmhurst Rooming House." Lydon testified that, on August 31, 1926, he went to Stockton and called at the Elmhurst Rooming House and that the register of said house contained the names of "Mr. and Mrs. Harry Bargala and J. B. Yarnell," they having registered at the rooming-house on August 27, 1926. Bargala and his wife were assigned on the register to Room No. 6 and Yarnell to Room No. 2.

The foregoing involves a synoptical statement of all the testimony received in the case. It is clear from the circumstances, as the evidence revealed them, that we cannot say, as a matter of law, that the verdict is not sufficiently supported. The situation, briefly recapitulated, is this: That the defendant and Yarnell or Golightly, as the defendant referred to him, were, prior to the time that the property was stolen, personal acquaintances, they having first met each other when both were at the same time confined in a county jail; that defendant, as the jury were warranted in inferring from the fact that he did not use a truck for the purpose, was not in the trucking business, but, for the purpose of conveying the stolen property to the junk company's place of business, used a passenger or touring car; that to Yarnell was personally delivered the voucher or ticket authorizing the cashier of the junk company to pay the amount for which the property was sold, but, for some reason unaccounted for, he gave the voucher or ticket to defendant to present to the cashier and receive the money thereon, and that defendant did personally receive the cash called for by the voucher; that defendant, according to his own admission, on the day following that of the completion of the transaction, went to the city of Stockton and there took a room at a rooming-house; that Yarnell registered at the same rooming-house at the same time, from which the jury could well have inferred, and it may be assumed did conclude, that the two men went to Stockton together. All these were significant circumstances, and, unexplained, as they were not so explained, upon some satisfactory hypothesis consistent with the innocence of the accused, may justly be regarded,

as probably the jury so regarded them, as of sufficient incriminatory force to persuade to the conviction, beyond a reasonable doubt, that the defendant was a party to the asportation of the property. The jury were not required to accept as verity that part of the defendant's statement to Lydon that he received but $25 of the total sum for which the property was sold. That part of the statement would, of course, be consistent with the defendant's claim that he had nothing to do with and had no knowledge of the act or fact that the property was stolen and that the extent of his connection with the transaction was the fact that he was merely employed to haul the property to the junk-house. Naturally (the jury could have reasoned) the defendant, to support his defense, would, even though it were not true, fix the amount received by him at much less than one-half the total amount for which the property was sold, and, from the circumstances showing his acts and conduct with respect to the transaction, the jury could have reached the conclusion, and without relying upon their imagination or upon suspicion, that the defendant received a greater sum than $25 from the proceeds of the sale. This circumstance we have particularly noticed, because the counsel for the defendant, in his brief as well as in his oral argument, gives and gave its special emphasis as in the establishment of the proposition that the defendant would have received a much larger sum than $25 out of the proceeds of the sale of the property had he really been a *particeps criminis* in the larceny.

Counsel cites several cases in which the salutary and time-honored rule is repeated that, to justify the conviction of a party charged with the commission of a public offense, the evidence must be such as to show his guilt beyond a reasonable doubt. [2] That rule of law, however, is one which must be addressed to and applied by the jury trying the accused in their consideration of the evidence, and is not pertinent in the consideration of the case by the courts of appeal. The latter courts never apply the rule of reasonable doubt in their consideration of the evidentiary phases of criminal cases on appeal, although they are legally at liberty to hold, where the record justifies or requires it, that, as a matter of law, the evidence in a given case is insufficient to

uphold the verdict. As we have declared, we do not feel that we are justified in holding, as a matter of law, that the evidence is insufficient to uphold the verdict in the instant case.

The judgment and the order are affirmed.

Plummer, J., and Finch, P. J., concurred.