[Crim. No. 1052.   Second Appellate District, Division Two.—May 3, 1924.]

## THE PEOPLE, Respondent, v. DAN FARRELL et al., Appellants.

[1] CRIMINAL LAW—GRAND LARCENY—THEFT OF AUTOMOBILE TIRES AND TUBES—CLAIM OF INSUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT—DUTY OF APPELLATE COURT.—In a prosecution for grand larceny of automobile tires and tubes, in passing upon the claim

----

1.  See 8 Cal. Jur. 585; 2 Cal. Jur. 820; 2 R. C. L. 193, 282.

of defendants that the evidence is insufficient to support the verdict, it is the duty of the appellate court to consider in the strongest light the testimony introduced by the prosecution, to disregard all evidence conflicting therewith which was offered by the defendants, and to affirm the judgment if there be any substantial showing which tends to connect the accused with the commission of the alleged larceny.

[2] ID. — IDENTIFICATION OF STOLEN PROPERTY — EVIDENCE. — In such prosecution, the jury was warranted under the evidence in its conclusion that the tires and tubes which defendants brought to a garage after the alleged theft were a part of those which had been stolen.

[3] ID.—VERDICT OF GUILTY—EVIDENCE.—The evidence in such prosecution was sufficient to support the verdict of the jury finding the defendants guilty.

[4] ID.—RECENT UNEXPLAINED POSSESSION—CORROBORATIVE EVIDENCE—DEGREE REQUIRED.—While it is the law that evidence of recent unexplained possession of stolen property, standing alone, is not sufficient to justify a verdict of guilty of larceny, it equally is the law that if a person be found in possession of such property, "slight corroboration of other inculpatory circumstances tending to show his guilt will support a conviction."

[5] ID.—POSSESSION—WEIGHING THE EVIDENCE—WHAT MATTERS MAY BE CONSIDERED BY JURY.—In determining the weight to be given to the recent possession of stolen property the jury may consider the "proximity of the place where found to the place of the alleged grand larceny; the lapse of time since the property was taken; the character and nature of the property taken; whether the property was concealed; whether the party denied or admitted the possession; and the demeanor and character of the accused."

[6] ID.—FALSITY OF EXPLANATION OF POSSESSION — INCRIMINATORY CIRCUMSTANCE—EVIDENCE.—The falsity of the explanation given by an accused to account for his possession of the property is an incriminatory circumstance to be taken into account by the jury in determining whether his possession justifies the inference of guilt.

---

(1) 17 C. J., p. 223, sec. 3569, p. 364, sec. 3741.   (2) 36 C. J., p. 906, sec. 485.   (3) 36 C. J., p. 899, sec. 483.   (4) 36 C. J., p. 899, sec. 483.   (5) 36 C. J., p. 899, sec. 483, p. 914, sec. 502, p. 917, sec. 512.   (6) 36 C. J., p. 914, sec. 501.

4.  Possession of recently stolen property as evidence of larceny, note, 12 L. R. A. (N. S.) 199. See, also, 15 Cal. Jur. 932; 17 R. C. L. 71, 73.

6.  See 15 Cal. Jur. 934; 17 R. C. L. 74.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Carlos S. Hardy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur C. Webb for Appellants.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendants were convicted of the crime of grand larceny, the charge being that they feloniously took and carried away automobile tires of the aggregate value of $1,100, the property of a firm doing business in the city of Los Angeles under the name of Martin & Green. The appeal is from the judgment and from the order denying defendants a new trial.

It is contended that the only evidence of guilt is the circumstance that defendants were in possession of the stolen property shortly after the theft; and since evidence of recent unexplained possession of stolen property, standing alone, is not sufficient to justify a verdict of guilty of larceny, it is claimed that the evidence is insufficient to support the verdict. [1] In passing upon this claim it is, of course, our duty to consider in the strongest light the testimony introduced by the prosecution, to disregard all evidence conflicting therewith which was offered by the defendants, and to affirm the judgment if there be any substantial showing which tends to connect the accused with the commission of the alleged larceny. The facts, in substance, as illustrated by such testimony, are these: Defendants are brothers. They previously had been convicted of a felony and at the time of the theft were but recently out of the state penitentiary on parole. On July 7, 1923, the tires in question, as well as certain tubes—new tires and tubes which were a part of the stock owned by Martin & Green—were stored in that firm's place of business in the city of Los Angeles. They were there as late as 9:30 o'clock of the evening of that day, at which hour Sam Green, one of the members of the copartnership, closed his firm's place of business by locking the doors and windows, and then

left the premises. The articles were stolen some time during the night. At about midnight, or within two and a half hours after Sam Green had closed the store, the two defendants, in an automobile which one of them was driving and which was laden with thirty-three of the stolen tires and about fifty of the stolen tubes, drove into the Hill View Garage in the city of Los Angeles. It is claimed by appellants, though the point does not seem to be urged with any great degree of confidence, that the evidence is insufficient to establish the identity of the tires and tubes which defendants brought to the Hill View Garage with those which admittedly were stolen from Martin & Green's place of business during the night in question. [2] Without specifically reciting the evidence which bears upon this phase of the case, let it suffice to say that we are satisfied from a reading of the record that the jury was warranted in its conclusion that the tires and tubes which defendants brought to the Hill View Garage were a part of those which had been stolen from Martin & Green.

When defendants drove into the Hill View Garage the only person whom they found there was a night watchman. Defendants unloaded the tires and tubes on the floor of the garage and with the aid of the watchman put them away in a closet where such merchandise was customarily stored by the proprietors of that establishment. At the same time defendants made out a list of the tires and tubes, and thereupon took their departure. Neither defendant had any interest in the Hill View Garage. Nor did either of them vouchsafe any information to the night watchman as to why they had brought a load of new tires and tubes to that particular place at that hour of the night. Indeed, the night watchman testified that defendants had no conversation with him whatever. About noon of July 9th defendants returned to the Hill View Garage and made an offer to sell the tires and tubes to one of the proprietors. The latter replied that he did not want to buy the articles and ordered their immediate removal. In compliance with this demand defendants loaded the tires and tubes into their automobile and carried them to a gasoline station in the city of Los Angeles conducted by a man of the name of Damerel. The articles were taken by defendants from the Hill View Garage in three separate loads. Upon ar-

riving at Damerel's gasoline station with the first load one of the accused, in the presence of his brother, asked Damerel, who previously had bought tires of defendants, if he wanted to purchase some more tires, telling him that the tires which he could buy were in a garage. Upon being told by Damerel that he did not wish to buy any more tires, the defendant who was carrying on the conversation with Damerel asked the latter if the tires could be left at his gasoline station until defendants could deliver two of them to their mother, when they would call again and take away the remaining tires and tubes. On the evening of July 12th, at about 9:30 o'clock, the defendant Paul Farrell drove to Damerel's gasoline station in an automobile and was then taken into custody by the officers who were waiting to make the arrest. Part of the tires were found by the officers at the gasoline station, part in Damerel's home, and two of them were found later on the wheels of an automobile standing on the premises occupied by defendants' mother. The defendant Dan Farrell was arrested between 2 and 3 o'clock on the morning of July 13th, as he was unlocking the door to his room. Neither defendant offered any explanation prior to the trial to account for his possession of the stolen property. Dan Farrell, upon being asked by the arresting officers if he wished to tell them his story of the tires, hung his head for a long time and then said: "Well, I can't say anything that would do me any good, and anything that I would say would be used against me." Both defendants testified at the trial as witnesses in their own behalf. They disclaimed all knowledge that the property had been stolen, stoutly maintaining that they had received it innocently from Damerel. They testified in substance, that at about 8 o'clock on July 7th or 8th they drove to Damerel's gasoline station; that the latter asked them to carry some tires to the Hill View Garage; that in compliance with this request they loaded the tires and tubes into their automobile, drove to the Hill View Garage and left them there with the night watchman, after making a list of the articles; that two or three days later, at Damerel's request, they brought the tires and tubes back to the latter's gasoline station; and that the defendant Dan Farrell purchased from Damerel, for fifty dollars, the two tires which later were found at the home of defendants' mother. Defendants who, as we have stated, made an offer to one

of the proprietors of the Hill View Garage to sell him the tires, admitted while on the witness-stand that Damerel had not requested either of them to sell the property. The jury evidently believed Damerel's version of the facts, and thus stamped as false and fabricated the story told by defendants to account for their possession of the stolen articles.

[3] We think it clear that the evidence abundantly supports the verdict of the jury. [4] While it is the law that evidence of recent unexplained possession of stolen property, standing alone, is not sufficient to justify a verdict of guilty of larceny, it equally is the law that if a person be found in possession of such property, "slight corroboration of other inculpatory circumstances tending to show his guilt will support a conviction." (*People* v. *Cataline,* 54 Cal. App. 36 [200 Pac. 1060].) [5] In determining the weight to be given to the recent possession of stolen property the jury may consider the "proximity of the place where found to the place of the alleged grand larceny; the lapse of time since the property was taken; the character and nature of the property taken; whether the property was concealed; whether the party denied or admitted the possession; and the demeanor and character of the accused." (*People* v. *Farrington,* 140 Cal. 659 [74 Pac. 288].) [6] The falsity of the explanation given by an accused to account for his possession of the property is an incriminatory circumstance to be taken into account by the jury in determining whether his possession justifies the inference of guilt. In *People* v. *Cataline, supra,* the court says: "The recent possession of the stolen car, together with his false denials and his conduct at and about the time of his apprehension, are sufficient to sustain the verdict of conviction." (See, also, *People* v. *Luchetti,* 119 Cal. 501 [51 Pac. 707]; *People* v. Lang, 142 Cal. 482 [76 Pac. 232]; *People* v. *Miller,* 45 Cal. App. 494 [188 Pac. 52]; *People* v. *Howard,* 58 Cal. App. 344 [208 Pac. 1022].) In *People* v. *Lang, supra,* it is said: "The authorities hold that where goods have been feloniously taken by means of a burglary, and they are immediately or soon thereafter found in the possession of a person who gives a false account, or refuses to give any account, of the manner in which he came into the possession, proof of such possession and guilty conduct is presumptive evidence not only that he stole the goods, but

that he made use of the means by which access to them was obtained.''

The evidence discloses incriminatory circumstances of a most damaging character to corroborate the circumstance that defendants had in their possession the recently stolen property. At midnight, within two and a half hours from the time when it was possible for the theft to be committed, defendants drove into a garage with the stolen tires and tubes. Such property—thirty-three new tires of different makes and fifty tubes—is not of a character which customarily is hauled about at midnight for any innocent purpose and left in a garage without giving to the person in charge any explanation of why such property happened to be brought to such a place at such an hour. But perhaps the most damaging circumstance of all is the fabricated story put forth by appellants while on the witness-stand to account for their possession of these tubes and tires. These and other circumstances to which we might allude did space permit fully warrant the conclusion that the evidence, though circumstantial and not conclusive, is legally sufficient to support the verdict.

Appellants have presented two or three other points, but they are so utterly lacking in merit that we do not deem them worthy of any special notice or consideration. A careful examination of the entire record convinces us that there is no error justifying a judgment of reversal.

The judgment and the order appealed from are affirmed.

Works, J., and Craig, J., concurred.