[Crim. No. 974. Third Appellate District.—June 15, 1927.]

THE PEOPLE, Respondent, v. ARTHUR MELSON, Appellant.

George Stahlman and Sydney Bennett for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted of the crime of petit larceny, after having suffered two prior convictions for grand larceny. The information, among other things, alleges that on or about the twenty-second day of November, 1926, in the county of San Joaquin, the defendant did "wil-

fully and unlawfully steal, take and carry away a quantity of copper wire of the value of $195.00 in gold coin of the Government of the United States and the said property was then and there the personal property of William H. Ford, doing business under the firm name and style of River Rock and Gravel Company.''

Upon this appeal, it is urged that the conviction of the defendant was had upon the testimony of an accomplice insufficiently corroborated; that there was no sufficient proof of ownership of the property alleged to have been stolen; that the court erred in its instructions to the jury, and that the district attorney was guilty of prejudicial misconduct in his argument to the jury.

The record shows that some time previous to the commission of the alleged offense the defendant was living with his wife in a house situated on a small tract of land a short distance from the town of Tracy, in the county of San Joaquin, and that for a short period of time preceding the alleged offense one Glenn Duvalle, a boy of about the age of nineteen years and a brother of the defendant's wife, had been stopping at the defendant's home; that on the twenty-second day of November, 1926, the defendant, accompanied by the said Glenn Duvalle, drove a Ford automobile from his place of residence to the premises used and occupied by the River Rock and Gravel Company, which premises were situate about seven miles southwest of Tracy, and likewise in said county of San Joaquin, and took from the said premises about 60 feet of copper wire belonging to said company, described as 3 conductor electric cable. This cable was protected by what is called a steel armor. The cable and the armor were brought to the place of defendant's resident the same night; the next morning the steel armor was removed from the electric cable and thrown over and found in an adjoining field near where the defendant resided. The insulation was then burned from the cable wire. After the insulation was burned off the defendant, accompanied by Duvalle, brought the cable wire in a sack to a junk dealer in Stockton, and there sold the same, together with sundry other articles of junk. The witness Duvalle testified that the sack contained the same wire that had been stolen the previous evening, the change being in taking off the armor and burning the insulation.

Upon the trial of the case a witness, E. E. Williams, who testified that he was the superintendent of the River Rock and Gravel Company, described the wire in question and produced in court a short piece of wire from which the 60 feet of cable had been taken. In describing the wire, this witness spoke of it as 7 strand of 19 wires each. The witness Horowitz, connected with the junk company to which the copper wire was sold, described the wire as 3 strand wire. Upon this difference in the description of the wire it is strongly urged that the testimony does not show the sale and purchase of the stolen cable. The testimony, however, goes further than this. Shortly after missing the cable herein referred to, a piece of wire taken from the same strand and the one which was exhibited in court was taken by an officer to the junk dealer and there compared with the stolen cable, and the witness, Horowitz, above referred to, testified that the wire purchased from him was the same kind of cable exhibited to him as a part of the cable from which the 60 feet of wire were alleged to have been stolen. The stolen wire was not exhibited in court, having been disposed of by the junk dealer prior to the trial. The testimony shows that the junk dealer paid the defendant the sum of $9.70, no part of which was received by the witness Duvalle. There is also testimony in the record of an examination of the footprints where the Ford car was stopped by the defendant near the premises of the River Rock and Gravel Company, from which the copper wire was taken; that these footprints were made by shoes similar to shoes seen upon the defendant's feet shortly after the said twenty-second day of November, 1926. An examination was also made of the tracks of the automobile. It appears that the tracks where the automobile turned showed that the front tires were considerably worn. An examination of the Ford automobile owned by the defendant exhibited such a condition of the front tires thereon.

The testimony also shows that the armor herein referred to, used to protect the cable, was found in an adjoining field near the premises occupied by the defendant. The testimony of the defendant is to the effect that the armor was seen by him lying in the field referred to as early as August in 1926, and that he also saw wire lying in the field near the same place in August; that he took wire to

Davidson's junk shop and sold it; that he obtained possession of the wire sold to Davidson in the following manner:

"Q. This wire you sold to Davidson's junkshop, where did you get it? A. I got some of it over at the city dump, and there was Ed. Vergin and a fellow called John had the name of—well, I can't remember the name, but anyhow they were junking together, and they had some kind of a split-up, and when John went to take a load of junk he had down to Stockton here to somebody, I don't know where he sold it, there was a sack in this car that belonged to them, and this John said he was going to throw that stuff out of the car belonging to Ed. Vergin, so he threw it by the side of the fence, and it lay there for quite a while. . . .

"Q. And the other wire, where did it come from? A. The other wire was wire John threw out of his car, said it belonged to Ed. Vergin. Afterwards, I heard this other fellow wouldn't come back any more. I says I think I will sell that stuff he throwed out there, take all this I could take to this junk company in Stockton; my wife went out there and helped me put it in the car; she was there when I put it in the car; also Glenn Duvalle, then we came to Stockton."

The defendant also testified that on the evening of the twenty-second of November he loaned his Ford automobile to the witness Duvalle; that the witness Duvalle left his house saying that he was going to town; that he came home about half-past 10 that same evening; that the next morning the witness Duvalle told the defendant he had got some copper wire, whereupon the defendant told the witness to get it away from there.

■ Relying upon section 1111 of the Penal Code, it is urged that there is not sufficient corroboration of the testimony of the witness Duvalle, in that there is no testimony tending to connect the defendant with the commission of the offense. A *résumé* of the testimony which we have given appears to us a complete answer to this contention. While it might not be sufficient to convict, the finding of the armor in the vicinity of the defendant's residence, the similarity of the automobile and shoe tracks found at the scene of the larceny with the shoes worn by the defendant, and the tires with which the defendant's automobile was equipped, the sale of the wire by the defendant, identified as we have

shown as the same kind of wire taken from the premises of the River Rock and Gravel Company, all tend to connect the defendant with the larceny charged. The explanation given by the defendant on the witness-stand really enforces the corroborative testimony instead of being a statement of exculpatory facts. The question of the sufficiency of corroborative testimony has so recently been before this court that we need really only refer to the cases. In the case of *People* v. *Viets,* 79 Cal. App. 576 [250 Pac. 588], this court, in considering the necessity of corroborative testimony, speaking through Mr. Justice Hart, used the following language: "The corroborating evidence, however, need not, in degree, be such as to establish guilt, 'for, in that event, the testimony of the accomplice would not be needed.' *People* v. *Ames,* 39 Cal. 403, 404; *People* v. *Compton,* 123 Cal. 403 [56 Pac. 44]. All that is required in such a case is that there be produced some testimony other than that of the accomplice which tends, in some slight degree at least, to implicate the defendant in the commission of the crime for which he is on trial. *People* v. *Clough,* 73 Cal. 348, 351 [15 Pac. 5]; *People* v. *Wagner,* 36 Cal. App. 41 [171 Pac. 699]." And, in *People* v. *Bargala,* 81 Cal. App. 381 [253 Pac. 938], the same question was again presented. The Bargala case is somewhat identical with the one we are now considering. In both cases stolen wire was involved. In the Bargala case the defendant's claim was that he simply used his autotruck to go and get the wire for a man by the name of Yarnell; that he hauled the wire to the city of Sacramento, where it was sold for the sum of $92, out of which he was paid the sum of $25. The money was collected by the defendant when the wire was sold to a junk dealer in the city of Sacramento, and according to the defendant's testimony $25 retained by him. After the sale of the wire it appears that the two, the defendant and the man Yarnell, went to the city of Stockton and stopped at the same rooming-house and remained there a short time. This, together with the testimony of employees of the Pacific Telephone and Telegraph Company, from whom the wire cable had been stolen, identifying the wire purchased by the junk dealer from the defendant and his associate Yarnell, was held sufficient to uphold the judgment of conviction.

In the case at bar, we are not called upon to hold that the corroborating testimony referred to is sufficient to sustain a conviction. All that is necessary in this case is to find that there is sufficient testimony in the record which tends to connect the defendant with the commission of the crime charged. ■ We do not need to cite authorities to the effect that unexplained possession of stolen property shortly after the larceny is a circumstance tending to connect the party in whose possession it is found with the larceny. ■ We may also add that an improbable explanation stands on the same footing with no explanation. The jury, we think, had a right to consider that the statement of the defendant that the wire was left by an unknown man named "John" was, in fact, no explanation.

■ To sustain his contention that the court erred in refusing to instruct the jury, as requested by the defendant, our attention is called to the following instruction asked for by the defendant and refused by the court: "The legal presumption of innocence is a matter of evidence in his favor to the benefit of which a defendant in a criminal case is always entitled, and unless the jury are entirely satisfied that the defendant's guilt has been proved beyond all reasonable doubt and to a moral certainty, they must find a verdict of not guilty."

Without questioning the correctness of this proposed instruction, an examination of the record discloses that the real meat of the refused instruction is involved in the charge given to the jury by the court. The court, in its charge, instructed the jury: "The defendant in a criminal case is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal."

And, also, the court instructed the jury as follows: "The court instructs the jury that no presumption of the defendant's guilt should be indulged in by the jury from the fact that an information has been returned against him, or from the fact of his arrest, or that he is placed on his trial; on the contrary, every presumption except such as may arise from the evidence in the case, is in favor of the innocence of the defendant and the jury should be governed by that presumption of innocence during their entire deliberations, unless it be overcome by evidence that will fully

satisfy the jury of the defendant's guilt, and if the jury are not entirely satisfied from the evidence of the defendant's guilt beyond a reasonable doubt and to a moral certainty, the jury should acquit the defendant.''

From these instructions it appears that the defendant has suffered no prejudice by reason of the court refusing to reiterate in a different form the substance of instructions already given.

The objection that the prosecuting attorney, in his argument to the jury, was guilty of prejudicial misconduct has been examined and is so completely without merit as to require no further mention in this opinion.

The final objection to be considered is that there was no sufficient ownership proven of the property alleged to have been stolen to support the verdict in this case. The information, as we have said, charged the stealing of certain copper wire, the personal property of William H. Ford, doing business under the firm name and style of River Rock and Gravel Company.

The record shows that E. E. Williams testified that he was the superintendent of the River Rock and Gravel Company, that on the twenty-second day of November, 1926, the company missed some of its property, which consisted of an electric cable about 60 feet long. The effect of this is to show that the company owned the property or that it belonged to the company.

The authorities are uniform that under the common law this failure in the proof as to the ownership of William H. Ford would be fatal. To cover such technical defects in the testimony as to ownership of stolen property, the variance in the testimony from the allegation as to ownership of stolen property, the legislature of this state adopted section 956 of the Penal Code, which reads: ''When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material.''

Following this section and the interpretation placed thereon, we find in 14 Cal. Jur. 101, the text-writer summarizing the law as follows:

"Ownership may or may not be an essential matter of description according to the offense charged and the circumstances of its commission. The general rule is that ownership must be proved as alleged because it identifies the offense. This is the rule at common law. But under section 956 of the Penal Code, an erroneous allegation as to the person injured is not material, if the offense is described with sufficient certainty in other respects to identify it. This section applies to burglary, larceny, etc. The name of the owner of property affected is not a material part of a crime. It is only required to identify the transaction, so that the defendant, by a proper plea, may protect himself against another prosecution for the same offense. And if the property in question is otherwise sufficiently described, and there is no proof that there is other property answering the description, an averment of ownership is surplusage and need not be proved as alleged. So if a crime is identified with sufficient certainty to protect the defendant against another prosecution, the variance is not fatal where ownership of property in a particular person is alleged, and the proof is that other persons are also interested with the person named, or where ownership in several is alleged, and the evidence shows ownership in but one. . . . Likewise, there is no material variance where it is alleged that the property belongs to John Doe, whose real name is unknown, and the proof shows that it belongs to a woman, or where ownership in a man is alleged, and it is proved that the property belongs to his wife. . . . If, however, the only description of property is by the averment of ownership, the averment is a material part of the offense charged, and must be proved as alleged."

In support of his contention that the ownership in this case, as alleged, is an essential element to be proven, the appellant calls our attention to the case of *People* v. *Webber*, 138 Cal. 145 [70 Pac. 1089]. In that case it is held that where the defendant was charged with burglary in entering a railroad car, the ownership must be proved, and when the proof shows ownership by a different railroad company from that alleged, the variance was fatal. The testimony in that case showed the burglarizing of one of the cars of a certain railroad train. The car was named in the

information. The charge was that the defendant entered a certain railroad car and train, to wit, a railroad car and train owned by the Southern Pacific Company, with felonious intent, etc. The evidence was to the effect that the defendant entered a car marked 'O. S. L.,'' the property of the Oregon Short Line Railway Company, numbered 14087, and that this company was distinct from the Southern Pacific Company. It was held that in that case, citing other authorities to the same effect, that an allegation of entering a car belonging to one company cannot be sustained by proof of entering the car of a different and distinct company. The court also took the occasion to point out that a railroad train is made up of a number of distinct cars and that the identity and ownership of the car entered was an essential ingredient of the offense to be alleged and proved, in order that a conviction on such a charge would be a complete bar to a further prosecution.

In the case of *People* v. *Hughes,* 41 Cal. 234, it is said: "An allegation of the ownership of the stolen property is essential in an indictment for larceny, unless the offense is otherwise sufficiently described,'' and the court also held, "if the variance between an allegation in an indictment and the proof be immaterial, it should be disregarded.'' The opinion of the court is to the effect that ownership of the property was an essential element in that case, and cites other cases to the effect that where ownership is a part of the necessary description of the property, it must be proven. That case turns upon the view of the court that, as stated, the allegation of ownership was a necessary part of the description of the offense.

The case of *People* v. *Wallace,* 94 Cal. 497 [29 Pac. 950], turns upon the question of a variance between the complaint filed in the justice's court and the information upon which the defendant was tried and for that reason is not material here.

In the case of *People* v. *Reed,* 70 Cal. 529 [11 Pac. 676], upon an information charging the obtaining of money by false pretenses on a promissory note alleged to have been executed by the person defrauded, it was held that evidence showing the execution of a note executed by the person defrauded and another was insufficient, as the proofs established a separate and distinct offense from that charged.

In the case of *People* v. *Davis*, 97 Cal. 194 [31 Pac. 1109], the defendant was convicted of grand larceny upon a charge of taking the property belonging to one John Doe. The person from whom the property was taken did not appear as a witness. The testimony showed that the property was taken from the person of a woman by the appellant, while she was standing in a crowded street-car. This was held sufficient to show ownership and to sustain a conviction.

In the case of *People* v. *Oldham*, 111 Cal. 648 [44 Pac. 312], in considering evidence relating to ownership and possession sufficient to sustain a conviction of grand larceny, the court used this language: ''The lawful possession of the money by Hart was the possession of Wells, Fargo & Co., and likewise the actual lawful possession of it by the driver of the stage was the possession of the company. In the absence of evidence to the contrary, in larceny or robbery, possession of the stolen property is sufficient evidence of ownership. The criminal law of this state is not favorably disposed in allowing criminals to escape upon technicalities of this character; and, as supporting the principle here declared, we cite *People* v. *Nelson*, 56 Cal. 77; *People* v. *Davis*, 97 Cal. 194 [31 Pac. 1109].''

In that case, the judgment was reversed upon other grounds, but the comments of the court here quoted seem to us quite applicable.

In the case of *People* v. *Nunley*, 142 Cal. 105 [75 Pac. 676], the supreme court of this state had occasion to take up and consider at length practically all of the previous cases having to do with the question which we are now considering, and also of the intent and purpose of section 956 of the Penal Code. A number of cases are cited to the effect that the name of the owner of stolen property is not a material part of the offense charged. ''It is only required to identify the transaction, so that the defendant, by proper plea, may protect himself against another prosecution for the same offense,'' and further, quoting with approval from *State* v. *Nelson*, 11 Nev. 339, ''the only thing essential in either case [larceny or robbery] seems to be an averment which shall show conclusively that the property does not belong to defendant. And courts have shown a disposition to allow any sort of interest in or right to the custody of the

property to be sufficient proof of ownership . . . because the protection of innocence can never by any possibility require any strictness of proof on this point.'' In the Nunley case the information charged the ownership of a horse stolen as the property of J. Suey Lung. The testimony showed that Lung was what was called a ''boss-man,'' that the horse was one of a number belonging to a company of Chinese called Fook Wah, composed of a number of people. This variance was held to be immaterial.

In the case of *People* v. *Sing,* 42 Cal. App. 385 [183 Pac. 865], the information charged the defendant with the larceny of 252 sacks of potatoes, the personal property of three Japanese. The appellant claimed that there was no evidence that the three Japanese owned the potatoes. N. Namekawa, one of the three Japanese named in the information as the owner of the potatoes, testified that he and two others were partners; that he was engaged in farming on a ranch near Anaheim; that his two partners were farming with him; that they were raising sweet potatoes; that he carried on all the negotiations for the sale of the potatoes, and spoke of them as ''my potatoes.''

The court, in considering the question of variance, stated: ''Moreover, the variance . . . , was not fatal. It would have been fatal at common law; but in this state it is provided by statute—section 956 of the Penal Code—that 'when an offense involves the commission of . . . a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured . . . is not material.' In larceny, the name of the owner of the stolen property is not a material part of the offense charged. It is only required to identify the transaction, so that the defendant, by proper plea, may protect himself against another prosecution for the same offense. The essential thing is an averment which shall show conclusively that the property does not belong to the defendant.''

 In the case at bar there is no question but that both the allegations and the proof show conclusively that the property did not belong to the defendant; that certain property was stolen; that it was taken from the possession of a certain concern alleged to be owned by one William H. Ford.

The testimony shows that it was taken from the possession of the concern doing business under the name of River Rock and Gravel Company, the name under which it is alleged William H. Ford was doing business. There appears to be no question as to the identity of the place from which the property was stolen, the place where the River Rock and Gravel Company was doing business. The testimony of the witness Williams is to the effect that at the time of the larceny he was the superintendent of the company, that as such superintendent he missed cable wire alleged to have been stolen by the defendant, taken from the premises of the River Rock and Gravel Company, the location of the premises being stated in the testimony. The testimony of the witness Duvalle, who accompanied the defendant in the larcenous expedition, definitely locates the place of the theft and the articles taken. The only variance or failure in the testimony is the fact that no witness testified William H. Ford owns the River Rock and Gravel Company and does business in that name. It is evident that this bit of testimony would add nothing to nor take from the defendant's guilt. It is merely descriptive of the ownership of the property and does not affect a single substantial right of the defendant, if there is sufficient in the case to constitute a bar against another prosecution for the same offense. Taking the allegations of the complaint and the testimony of Williams, the superintendent of the River Rock and Gravel Company, it is evident that the record shows sufficient to enable the defendant to effectively plead this prosecution in bar of any other action seeking his conviction.

Under this state of facts, the language of the supreme court in the case of *People* v. *Nelson,* 56 Cal. 82, in considering a case where sufficient proof was not made of ownership, said: ''We are at a loss to discover in what manner the rights of the defendants in this case could have been affected by the alleged error in the charge of the court. The evidence was clear and convincing, and left no doubt upon the question of the defendants' guilt of the crime of grand larceny. But were the instructions of the court obnoxious to the objection presented by the learned counsel for the appellants? It is said that they 'misled the jury, and wholly ignored the question of the ownership of the property taken.

The money might have belonged to the defendants.' There was no question on the trial as to the ownership of the money. It was not pretended that it belonged to the defendants, or to any other person than Ah Chung. The money was in the possession of Ah Chung, and was taken from his person by the defendants. Therefore, it was presumptively his property, and that was sufficient proof of ownership.''

The testimony in this case shows conclusively that the property in question was stolen from premises operated under the name of River Rock and Gravel Company; the premises operated under said name were also definitely located. There is no pretense in the testimony of there being other than the one place where such operations were being carried on.

In view of these facts and in view of section 956 of the Penal Code we do not very well see how the defendant has been prejudiced by the omission of testimony which could have gone only to a possible further description of the property and not added any element affecting the defendant's guilt. We may add, however, that these technical omissions should be more scrupulously guarded against by prosecuting officers.

The judgment of the trial court is affirmed.

Finch, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 15, 1927, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 11, 1927.