[Crim. No. 3416. Second Appellate District, Division Two.—February 17, 1941.]

THE PEOPLE, Respondent, v. URBAN U. SMITH, Appellant.

William J. F. Brown for Appellant.

Earl Warren, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

MOORE, P. J.—Defendant, having been convicted on two counts of grand theft by the court without a jury, takes this appeal from the judgment and from the order denying motion for a new trial.

As grounds for reversal, he urges (1) that the evidence is insufficient to support the judgment and (2) that the court erred in overruling certain objections to questions propounded to appellant upon his cross-examination.

In December, 1939, defendant contacted one Harry Chudacoff to whom he disclosed a desire to purchase six or seven wrecked cars. In the latter part of April, 1940, Chudacoff arranged for the purchase of a 1939 Dodge coupe from the Aetna Insurance Company at a price of $185, and he was paid by appellant the sum of $10 for his services in effecting the purchase. The car while going at a speed of 60 miles per hour had hit a telephone pole. Its front end was crushed, the radiator, the shell, grill and entire assembly, both front fenders, the hood assembly, the frame, knee action, right front wheel, hub, tire, tube, steering gear assembly, carburetor, fan, pump assembly, manifold and right door, windshield glasses and door glasses were broken.

Count 1 of the information accused defendant of stealing the car of one John E. Canaday. On May 29th, the police discovered a dark blue Dodge de luxe coupe stripped and abandoned at 21st and Harvard Boulevard. This was the car stolen from Canaday who had parked it at 6th and Normandie, two miles distant from the place where it was found by the police. When last seen by Canaday on Sunday, the 26th of May, his coupe was in good condition, contained a Motorola radio and standard equipment. When he saw it on the following Wednesday, it had been stripped of its hood, right door, radiator, carburetor, radio, three hub caps and the front grill. The missing door had been replaced by an old one and wired in its place; the front grill and hood had been replaced with an old part, and substituted parts had been put on Canaday's car from different cars which were all of different colors.

In the early part of June, Canaday at the request of the police called at the garage where they stated his car was impounded. He recognized it as his own car by the license number, certain private papers of his own and other dis-

tinguishing features. About ten days later Canaday called at the same shop where he inspected another 1939 Dodge coupe. He found upon it the parts which he definitely identified as those taken from his own car. His Motorola radio had been installed in this second car and was in the same condition as it was just before his own car disappeared. The right door of his car, which had been installed in the re-built Dodge had been painted a different color but beneath the paint the color of his own car was readily distinguished. By reason of his familiarity with the parts of his own coupe, he recognized all the parts which had been taken from his car and installed in the car inspected by him on the later occasion.

Count 2 of the information accused the defendant of the theft of a four-door Dodge sedan, belonging to one Wilson Evans, on or about June 1, 1940. At the time the Evans' car disappeared, it was standing on the parking lot of the Hollywood Race Track. Its color was light blue, or quadrant grey. It was equipped with Goodyear Lifeguard tires and tubes, the valve tips of which were painted blue. The car was also equipped with a Philco radio. When it was found by the police on June 4th at a garage at 1015 West Washington, the glass was broken from the front door, the radio and cigarette lighter and the spare tire had all been removed; the car was standing over a pit in the garage. The pan from beneath its motor had been removed and in its place a wrecked pan which had been taken from appellant's wrecked car had been attached. The drive shaft of the Evans' car had been supplanted with a wrecked drive shaft. When the investigating officers arrived at the premises mentioned, appellant was working on the Dodge coupe which he had purchased from Chudacoff. He was then about 50 feet distant from the Evans' car. Dressed in clothing such as is usually worn by garage mechanics, defendant stated that he was repairing and fixing up the wrecked car which he had purchased. A right-hand door had been installed on his car in place of the original door which had been torn off in the collision prior to his purchase. The new door, recently painted over, originally had the color of the Canaday car. The radiator grill was painted grey on the outside but its inside was still the color of the Canaday car. The Motorola radio had been taken from the Canaday car and installed

by appellant in his car. The Philco radio was identified by Evans as that which had belonged in his Dodge and was now found in the rear of appellant's car. Also, in the back of appellant's newly-built Dodge was found the spare tire, tube and wheel from Evans' car.

Appellant stated to the officers that he had fixed up the old radiator shell and the old door; that the hood had been wrecked; that he had to get a new one. Thereupon, witness Belknap, who was connected with the Automobile Theft Bureau, approached the officers and appellant bringing a grey hood from the front end of the garage. The officers scraped the paint and found beneath the color of the Canaday car. Appellant stated to the officers that he did not remember where he had got the hood or the Motorola or the Philco radio, or the floor board lying beside his car. Taking the ignition key from appellant's car, the officers found it to fit the lock in a wrecked door lying some distance from appellant's car. Defendant did not remember where he got the door. It was thereupon observed that the lock and handle had been removed from the door recently installed in appellant's car. The three hub caps from the Canaday car were installed on appellant's car. One of the wheels on appellant's car had the same color as the Evans' car, while the tip of the tube had the same light blue color as those on the tips of the valve stems of the tubes of Evans' car.

Appellant stated to the officers that he was in charge of the garage. Invoices were found showing appellant had given his address as that of the shop where he was found.

At the trial defendant testified that he had his car stored at the Washington Boulevard address but denied that it was his place of business or that he paid the rent or that he had a lease upon the premises.

He denied that he had been in the vicinity from which the vehicles had been taken and denied the thefts. He testified he had purchased the door and other accessories from a salesman who called upon him but he produced no invoices and had no memory of the salesman's name.

While the evidence is purely circumstantial, it might have convinced a trier of fact of appellant's guilt as readily as the direct testimony of a Christian martyr that he had witnessed the taking and stripping of the two cars. Even though it had not been so convincing as it appears to

us, it is not our function to determine the weight of the evidence. Our duty is to decide only whether the evidence is such that it can be held sufficient to warrant the inference of guilt. Before we can set aside a judgment of conviction for a crime ''it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.'' (*People* v. *Newland,* 15 Cal. (2d) 678 [104 Pac. (2d) 778].) Whether the evidence constitutes proof of the fact found is for the jury's determination. Such a finding will prevail ''unless the evidence preponderates so greatly against the verdict as to make it manifest that the verdict is the result of passion or prejudice.'' (*People* v. *Wong Chong Suey,* 110 Cal. 117, 121 [42 Pac. 420].)

■ The evidence was sufficient to establish the identity of the parts taken from the Canaday and Evans' cars after the thefts had been proved. (*People* v. *Farrell,* 67 Cal. App. 128 [227 Pac. 210].) The identification of stolen property by its owner is specifically made where the owner pointed out the identification marks and knows that the property is his own. (*People* v. *Miller,* 45 Cal. App. 494 [188 Pac. 52] ; *People* v. *McGill,* 82 Cal. App. 98 [255 Pac. 261].)

■ The *corpus delicti* was established as to the crime of theft of both the Canaday and Evans' cars. They were surreptitiously removed from the place where they were parked. They were both valuable properties. When found they had been stripped not only of valuable attachments but even of such parts as a door, hood, radiator, etc. The trial judge had only to determine whether the evidence was sufficient to show that defendant participated in the commission of the crime. Since one of the cars stood in the very garage of which appellant said he was the manager and where he was at work, and since, in addition, he was in possession of parts from both of the cars, the evidence abundantly supports the judgment.

■ Appellant's contention that he was never shown to have been in possession of either of the stolen cars is frivolous for two reasons. In the first place the Evans' car was on the premises where appellant was working on his own car at the time of his arrest, and the accessories and parts from both cars were at the time being installed by appellant in his own car and had been painted with the manifest intention of con-

cealing their identity. No one else at the garage asserted any right to the Evans' car. No one else was pointed out as having taken any parts from either car; only appellant with his "improbable explanation" (*People* v. *Melson*, 84 Cal. App. 10 [257 Pac. 555]) stood there with the stolen parts and accessories in his very hands.

Appellant assigns as error the rulings of the court in requiring the defendant to answer certain questions asked him on cross-examination relative to his past livelihood and the origin of his monies. But as the questions relative to the origin of his monies were answered before the objection, it must be disregarded.

 The inquiry as to the number of cars and kinds of cars appellant had fixed up for sale was proper cross-examination. Merely because defendant denied he had stolen the two cars in question was not conclusive against the district attorney who had introduced sufficient proof of such nature as to convince the defendant that he should take the witness stand. After giving his denial on direct examination, it was proper to cross-examine him as to all matters about which he was examined in chief. (Pen. Code, sec. 1323.) By the code section cited, the court is divested of any discretion in allowing a range of cross-examination beyond the matters brought out upon direct examination. "Any question which would have the tendency to elicit from him the whole truth about any matter upon which he had been examined in chief or which would explain or qualify or destroy the force of his direct testimony . . . would be legitimate cross-examination. (*People* v. *Gallagher*, 100 Cal. 466 [35 Pac. 80].) Defendant having testified that he had a businessman's coupe stored in the Washington Boulevard garage, having denied that he had any lease on the premises and having denied that he told the police officer that he was the manager of the garage, having denied that he had stolen the cars or that he took parts from them, it was correct practice to develop any details which would be reasonably calculated to show that his denial in chief was not true.

The judgment and the order are affirmed.

McComb, J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 17, 1941.