[Crim. No. 3154.   First Dist., Div. One.   Dec. 5, 1955.]

THE PEOPLE, Respondent v. GEORGE RHINEHART, JR., Appellant.

William John Scammon for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant was charged with having participated on April 4, 1955, in the theft of a Ford sedan belonging to Pearl Brent in violation of section 503 of the Vehicle Code. He waived a jury trial, and stipulated that the case could be tried upon the record of the preliminary hearing, plus his testimony given in the superior court. The trial court determined that, beyond a reasonable doubt, even if defendant was not the sole participant in the theft, he participated and knowingly assisted in the theft, and that this violated the code section. From the judgment of conviction based on this holding, and from the order denying his motion for a new trial, defendant appeals.

The code section involved is section 503 of the Vehicle Code. So far as pertinent here, the section reads: "Any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with intent to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle, whether with or without intent to steal the same, or any person who is a party or accessory to or an accomplice in any such driving or unauthorized taking or stealing is guilty of a felony. . . ."

Tested by the rules applicable to appeals in criminal cases the evidence, and the reasonable inferences therefrom, sustain the conviction.

Miss Brent owned the Ford sedan, license number 5B43966, that was stolen. At about 8:30 p. m. on April 4, 1955, she

parked it in front of a residence in San Mateo, and when she returned to where she had parked the car at about 10 p. m. it was gone. She had given no one, in general, permission to use the car, and, in particular, had not given defendant such permission. She did not know the defendant.

On April 5, 1955, at about 9:30 p. m., Officer Ellison of the San Francisco Police Department, saw the Ford, under suspicious circumstances, in San Francisco. It was parked on a deserted street, and on the rear seat of the car were two wheels and tires and other accessories from a Chevrolet. The officer knew that a short time before, about six blocks away, a Chevrolet had been found that had been completely stripped. The officer also noted that there was a metal coil attached to the ignition that served to short out the ignition. The Ford bore the license plate 3G948. The officer left to call a tow car and returned to the scene about 10 p. m. He testified that as he approached the Ford he saw defendant sitting in it and the starter was turning the motor over, but the engine was not running. There was no key in the ignition. The defendant was bleeding from several cuts on his head, but he did not appear intoxicated. Under questioning by the officer, the defendant stated that the car belonged to a friend named ''Frank,'' and that ''Frank'' had told him to fill the Ford with gas and drive it ''up the Navy Road.'' The officer took the defendant to ''Frank's'' supposed address ''and no one was living there by that name. We questioned neighbors and they said no one lived there by the name of 'Frank.' ''

Sergeant Otten of the San Mateo Police Department testified that on April 6, 1955, while questioning defendant, the defendant first stated that a person by the name of ''Frank'' had given him money to buy gas and instructed him to drive the car to Navy Road and leave it there. In a later conversation the same day the defendant said the other boy's name was ''Roosevelt''; that on the night of April 4th, ''Roosevelt,'' driving a Chevrolet, picked him up and they drove down to the Peninsula; that near the area from which the Ford was stolen ''Roosevelt'' stopped the Chevrolet, and told defendant that he, ''Roosevelt,'' was going to pick up another car. The officer summarized what defendant then told him as follows: ''At that time the Ford was taken and Rhinehart [the defendant] drove the Chevrolet back to San Francisco, where this other person stripped the Chevrolet.''

Sergeant Otten took defendant to San Francisco to try to locate where "Roosevelt" lived, but "he was not home."

The defendant testified on his own behalf. He denied that he had ever driven, taken, pushed or moved the Ford at any time, or that he had ever assisted any other person in such activities. Over his objection, on cross-examination, he stated that on the night of April 4th he and "Frank Roosevelt" had gone for a ride down the Peninsula in a Chevrolet; that "Frank" stopped the car and told defendant to drive it back to San Francisco; that he wondered how "Frank" was to get back to San Francisco, but asked no questions; that he did not then see the stolen Ford; that he drove the Chevrolet back to San Francisco, parked it on Navy Road where he had been told to, and walked a mile home, because he had no carfare. On direct examination he testified that on April 5th he met "Frank," driving the Ford, in San Francisco; that "Frank" told him he was going to drive the Ford to the spot where it was subsequently found and that defendant, later in the day, should drive it to Navy Road where he had left the Chevrolet; that "Frank" gave him 50 cents for gasoline; that defendant then visited some friends, had something to drink, and got into a fight in which his head was cut; that he then visited some more friends; that upon leaving these friends he saw the Ford parked where "Frank" had stated he would leave it; that he sat in the Ford for a few minutes to clear his head; that he did not try to start the car as there were no keys; that while sitting there Officer Ellison came by and questioned him; that he and Officer Ellison went to look for "Frank," but could not find him; that he and Officer Otten, the next day, went looking for "Frank," but could not find him; but they did find the house in which he lived.

If this evidence be construed most favorably to the prosecution, as this court must construe it (*People v. New-land*, 15 Cal.2d 678 [104 P.2d 778]; *People v. Daugherty*, 40 Cal.2d 876 [256 P.2d 911]), it is sufficient to sustain the conviction. On two occasions the officers were unable to locate the "Frank Roosevelt," who defendant said had taken the Ford. Defendant admits to being with "Frank" in the general area from which the Ford was stolen. He told Officer Otten that the Ford was then stolen. Defendant was arrested behind the wheel of the stolen car while attempting to start it without keys. The ignition of the car had been shorted. The evidence shows that defendant knew, when "Frank"

got out of the Chevrolet, that he was going to and did take the Ford, and it is a reasonable inference that defendant knew, or should have known, that it was a stolen car. This evidence sustains the finding that defendant was a "person who is a party or accessory to or an accomplice in any such driving or unauthorizing taking" of the car as set forth in section 503 of the Vehicle Code.

Mere possession of a stolen car, under suspicious circumstances, and certainly defendant while trying to start the car was in possession of it under such circumstances, is sufficient to sustain a conviction under the section. (*People* v. *Holland*, 82 Cal.App.2d 310 [186 P.2d 58].) In *People* v. *Ragone*, 84 Cal.App.2d 476 [191 P.2d 126], the court sustained a conviction under the section where the 'defendants were seen leaving a stolen car, the engine of which was left running, several hours after it was stolen. (See also *People* v. *Valdez*, 14 Cal.App.2d 580 [58 P.2d 656].)

Appellant predicates his claim of insufficiency of the evidence on the holdings in *People* v. *Flores*, 58 Cal.App.2d 764 [137 P.2d 767], and *People* v. *Lewis*, 81 Cal.App.2d 119 [183 P.2d 271]. In the Flores case the only evidence connecting the defendant with the theft was his own admission that he had sat in the car and a fingerprint of his was found on the rear view mirror. There was no evidence, such as exists in the present case, of defendant's presence in the area where the car was stolen, or that the defendant was arrested while sitting in the driver's seat trying to start the car. In the Lewis case the court held that the evidence was insufficient where there was no evidence that defendant either assisted or aided anyone in taking the car, or had taken it himself, or no evidence that the defendant had ever driven the stolen car or been in the area from which it was stolen, the only evidence being that he had ridden in the car and was arrested while sitting in it as a passenger and not as driver. That is not this case.

Both sides to this appeal argue over whether the evidence shows that "Frank Roosevelt" ever existed. The evidence, and the inferences from the evidence, on this issue, are conflicting. But even if it be assumed that "Frank Roosevelt" did exist, this would not aid appellant. The trial court found, assuming that "Frank Roosevelt" actually took the car, that the evidence, beyond a reasonable doubt, showed that defendant knowingly aided, abetted and participated in

the theft. That finding finds substantial support in the record, and that finding supports the conviction.

Appellant next complains of the overruling of his objections to portions of his cross-examination. On direct examination defendant first made a complete and general denial—he denied that he had at any time or on any date driven Miss Brent's car, or that he had taken, pushed or moved it, or that he had assisted anyone else in such activities. Then he testified as to his version of the occurrences of April 5th. On cross-examination, the prosecution, over objection, was permitted to examine defendant as to his whereabouts on April 4th, the night the car was stolen. This was clearly proper. While Penal Code, section 1323, only permits cross-examination of the defendant "as to all matters about which he was examined in chief," this does not mean, where the defendant has made a general denial, that the cross-examination is limited precisely to the matters, dates or times mentioned in the direct examination. The Supreme Court, in interpreting this section in *People* v. *Zerillo,* 36 Cal.2d 222, 228 [223 P.2d 223], stated: "This does not mean that the cross-examination must be confined to a mere categorical review of the matters, dates or times mentioned in the direct examination. [Citations.] It may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given by him on his direct examination. [Citations.] . . . If a defendant takes the stand and makes a general denial of the crime with which he is charged the permissible scope of cross-examination is very wide. [Citations.] Moreover, as stated in *People* v. *Teshara,* 141 Cal. 633, 638 [75 P. 338], 'A defendant cannot, by testifying to a state of things contrary to and inconsistent with the evidence of the prosecution, thus indirectly denying the testimony against him, but without testifying expressly with relation to the same facts, limit the cross-examination to the precise facts concerning which he testifies. He can be cross-examined with respect to facts or denials which are necessarily implied from the testimony in chief, as well as with respect to facts which he expressly states.' " (See also *People* v. *Smith,* 43 Cal.App.2d 110 [110 P.2d 472].)

Tested by these standards the cross-examination was proper. The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.