[Crim. No. 5883.   Second Dist., Div. Two.   July 11, 1957.]

THE PEOPLE, Respondent, v. ANNIE MAE JACKSON, Appellant.

Walter L. Gordon, Jr., and James L. Garcia, for Appellant.

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was convicted of (1) bookmaking, (2) keeping premises with paraphernalia for the purpose of recording bets, and (3) accepting bets in violation respectively of subdivisions 1, 2 and 6 of section 337a, Penal Code. The jury found also that the charge that defendant had previously been convicted of a felony was true. She appeals from the judgment and the order denying her motion for a new trial.

As grounds for reversal she contends that (1) the evidence is insufficient to sustain her conviction; (2) she was subjected, over her counsel's objection, to improper cross-examination by the prosecutor; and (3) the court erroneously admitted in evidence on rebuttal the circumstances involving her subsequent arrest for asserted bookmaking activities.

### The Evidence

On the day prior to defendant's arrest, Officer Archbold of the Los Angeles Police Department (vice detail) received

from the Department certain information containing, *inter alia,* the telephone number Ludlow 8-7658. Upon checking with the Telephone Company he discovered that this telephone was located at 822 East 93rd Street, Los Angeles. On the next day, April 27, 1956, Officers Archbold and King went to this location, which was a one-story, single-family residence. Officer King got out of the police car on 93rd Street at the first intersection west of this address and assumed a position from which he could observe the house in question. Officer Archbold went to a telephone booth and placed a call to Ludlow 8-7658. A feminine voice answered. The officer inquired whether this was Ludlow 8-7658. The feminine voice answered in the affirmative. Officer Archbold sought to identify himself as number "365." Although the lady on the other end of the telephone seemed a bit unsure of his identification, she finally said, "I guess it is all right, go ahead." Officer Archbold then told her that he wanted "Dancing Me in the third race, two to win, two to place." The lady responded that she didn't have a Dancing Me, but had a Dancing Mc, and asked if that was the horse he wanted, to which he replied "Yes, that's right." Officer Archbold then stated that in the fourth he wanted Texas Playgirl, two to win and two to show, and in the fifth he wanted Miss Senorita, two to win, two to place. The lady inquired whether that was all and hung up the phone when he said "Yes."

From the time the officers separated until Officer Archbold returned, Officer King had the premises under surveillance and saw no one enter or leave the house during that time. The officers then proceeded to the house. King went to the rear door while Archbold went to the front door. Archbold knocked on the door and immediately heard a toilet flush. He knocked again and identified himself as an officer and demanded admission. Upon the door's not being opened immediately, the officer forced his way into the house. Defendant was in the living room coming from the direction of the rear where the bathroom was located. Defendant was placed under arrest. The officers then went to the front bedroom which had a small offset which appeared to be a sewing room. There they found a sewing machine, on the top of which was a piece of linoleum, and on the floor by the sewing machine was a wet sponge and a yellow wooden pencil. Attached to the wall were three small portions of the National Daily Reporter (known as a scratch sheet) dated April 27, 1956. This publication gives the horses running at the

major tracks in the United States. When the officers entered, the radio in the sewing alcove was tuned to a station that was giving racing results. There were two telephones on a vanity bench. One of these phones had no number and the other had the number Ludlow 4-7826. Defendant told the officers that the number of the other phone was Ludlow 8-7658. This was the number Officer Archbold had called previously. Defendant was the only person in the house when the officers entered. Portions of a National Daily Reporter scratch sheet were recovered from the top of the waste basket in the bathroom. They were partially burned and in a wet condition. Another copy of the National Daily Reporter, dated April 27, 1956, was found on the kitchen table.

Officer Archbold spoke to the defendant after the arrest and recognized her voice as the voice of the person to whom he had spoken when he called Ludlow 8-7658. He testified that on that date a horse named Dancing Mc was running in the third race at Tanforan, and that Texas Playgirl and Miss Senorita were running respectively in the fourth and fifth races at that track. He testified also that it was common practice in this area for betters to use code numbers in placing bets with bookmakers in relay spots and that number 365, which he had used, had been contained in the information that he had received from the Police Department. Officer Archbold described also the operation of a relay spot as a place where a clerk receives calls from betters who are placing bets by telephone. The clerk makes a temporary notation of the wager and periodically the boss calls and takes all the information concerning the bets and then the records of the relay spot are erased or destroyed. He testified further that linoleum or other smooth surfaces are used in relay spots because they take an impression by pencil or other means and can be readily erased with a sponge or cloth; that after relaying the information to the employer or at the first sign of detection, the clerk erases the evidence.

While the officers were in the house the telephones rang about 15 times. Officer King took the calls. He answered Ludlow 8-7658 some eight or ten times. At approximately 2:45 that afternoon a masculine voice stated on the telephone, "This is Brown for 7 in the seventh race. Give me Jane Bell to Leona Welsh, two to win." King inquired, "Is that all?" The voice stated "Yes" and hung up. In the opinion of the officer, Jane Bell was a horse running in the seventh race, and the expression "to Leona Welsh" is a parlay win-

ning from the first horse, being automatically bet on a second horse if the first wins. In the expression "Brown for 7" Brown is the name of the better and 7 is a code number for an agent. In another telephone conversation, a masculine voice said, "This is Grandpa Lopez, do you have anything on the first?" King said "No" and the caller hung up. This inquiry, according to King, was a request for the results of the first race. Several times when King answered the telephone, the other party would ask for the woman and hang up when told she wasn't there. Others would say they had the wrong number, while still others would hang up without saying anything.

Defendant testified that she did not receive a telephone call as described by Officer Archbold, prior to the arrival of the officers, and that the entry into her house had not been preceded by a knock on the door. She denied having been in the bathroom immediately prior to the officers' arrival, and denied that there was any noise in the bathroom at that time. She admitted having worked on the telephone for bookmakers and described the operation. She denied, however, having been engaged in bookmaking activities of any kind on the date of her arrest, and explained that the linoleum was being used to protect the top of her sewing machine. She testified that the last time she had seen the charred portions of the scratch sheet was in the incinerator where she had put them that morning for burning.

### Sufficiency of the Evidence

█ In considering the contention that the evidence is insufficient to sustain the judgment, a reviewing court must accept as established all testimony and all reasonable inferences to be drawn therefrom in favor of the successful party in the trial court. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) In discussing the sufficiency of the evidence, we therefore proceed upon that principle.

█ The telephone conversation between Officer Archbold and defendant; the three pieces of the National Daily Reporter scratch sheet for that date attached to the wall of the sewing alcove by Scotch tape; the radio tuned to the station reporting racing results; the presence of two telephones in this alcove; the inquiries that were made over them, and which were received by the officers during the time they were in the house; the presence of a piece of linoleum, a pencil and a wet sponge; the use of numbers as a code by

which to identify the caller, and the explanation of this system and the use of paraphernalia there found by Officer Archbold, who was qualified as an expert on such paraphernalia and code identification in bookmaking in relay spots, point unerringly to the sufficiency of the evidence to sustain defendant's conviction on all counts.

In *People* v. *Burch,* 118 Cal.App.2d 122 [257 P.2d 44], a woman said to defendant, "Give me two dollars to win on Willow Way in the first race at Hollywood Park," and defendant replied "O.K." This was held sufficient to show that defendant was engaged in bookmaking and accepted a wager on a race. In *People* v. *Chaney,* 147 Cal.App.2d 740 [305 P.2d 955], the officer heard the defendant say he wanted "two to win on Jet Action in the eighth at Gulfstream," and defendant's reply "Okay." This was held to clearly justify an inference that Fraser was placing a bet on the race in question and that defendant was accepting such bet. In the Burch case, *supra,* the court pointed out that a volume of gambling is unnecessary to establish the offense, and that accepting one wager constitutes a violation of the code section.

In *People* v. *Watkins,* 126 Cal.App.2d 199, 203 [271 P.2d 641], the police officer answered a telephone call in which the caller sought to place a bet. In discussing this aspect of the case the court observed (p. 206) that telephones are paraphernalia within the context of the section in question, and that the telephone conversation received by the police officer is convincing evidence that the premises were used for bookmaking.

Defendant argues that there was no evidence of a meeting of the minds or exchange of promises in the telephone conversation between Officer Archbold and the defendant. There is no merit whatever in this argument. From what was said, it was entirely reasonable for the trial court to infer that a purported bet was being placed and that the defendant intended to and did accept it. (*People* v. *Burch, supra; People* v. *Chaney, supra.*)

Defendant also makes the argument that the items found in the sewing alcove are such as have innocent and lawful use in many other activities, and therefore do not justify defendant's conviction under count 2. This argument also is without merit. It was for the trial court to determine the significance of these items and the use to which they were being put. In the light of the numerous telephone calls re-

ceived by the police while there, the character of such calls, and the testimony of Officer Archbold as to the use of the paraphernalia there found in operating bookmaking telephone relay spots, it was entirely reasonable for the trial court to infer that the described paraphernalia was in fact being used for bookmaking purposes.

Finally, defendant suggests that her denial of bookmaking activity was entitled to more consideration than the testimony of the police officer. ■ The credibility of the witnesses and the weight to be given to their testimony is, of course, for the trial court to determine. ■ In view of defendant's obvious personal interest in the outcome of this case, and her prior felony conviction, the trial court was not required to accept as true her testimony. (*People* v. *Flores,* 147 Cal. App.2d 243 [305 P.2d 90] ; *People* v. *Curtis,* 104 Cal.App.2d 219, 223 [230 P.2d 877].)

### Propriety of Cross-examination

■ Defendant's next contention is that the trial court, over objection, improperly permitted the prosecution to cross-examine her concerning matters beyond the scope of the direct examination. On direct examination defendant testified that she had been a bookmaker in that she had worked at telephone relay spots. However, she denied having engaged in bookmaking activities of any kind on the date of the alleged offense. On cross-examination the prosecution was permitted to ask defendant whether she had been engaged in bookmaking activities on July 3, 1956, some two months subsequent to the date of the offense here in question, and she denied having been engaged in any such activity. She was then interrogated concerning the facts surrounding her arrest on that date for bookmaking.

In *People* v. *Zerillo,* 36 Cal.2d 222, 228 [223 P.2d 223], the court notes that the cross-examination need not be confined to a mere categorical review of the matters, dates or times mentioned in the direct examination. It may be directed to eliciting any matter which may tend to overcome or qualify the effect of the testimony given by defendant on his direct examination. "If a defendant takes the stand and makes a general denial of the crime with which he is charged the permissible scope of cross-examination is very wide." (*People* v. *Zerillo, supra,* p. 228. See, also, *People* v. *Teshara,* 141 Cal. 633, 638 [75 P. 338] ; *People* v. *Rhinehart,* 137 Cal.App.2d 497, 502 [290 P.2d 600].)

In *People* v. *Tarantino,* 45 Cal.2d 590 [290 P.2d 505] (reversed on other grounds), the defendant on direct examination testified in effect that he did not commit the extortions charged. The prosecution, over objection, cross-examined him as to other, similar offenses to which he had not referred in his testimony in chief. The court held (p. 599) that the cross-examination was proper, citing *People* v. *Zerillo, supra.* On the basis of these authorities, it is clear that the questions asked in the case at bar were within the permissible scope of cross-examination. (See also *People* v. *Cahan,* 141 Cal. App.2d 891, 903-904 [297 P.2d 715].)

### *Admissibility of Rebuttal Evidence*

Defendant's final contention is that the trial court erred in permitting a prosecution witness to testify in rebuttal concerning defendant's arrest for bookmaking on July 3, 1956. This evidence was properly received. It directly contradicted the defendant's statement concerning that occasion. The prosecution will not be precluded from "showing out of the defendant's own mouth that such statement is false." (*People* v. *Lindsey,* 90 Cal.App.2d 558, 566 [203 P.2d 572].) In *People* v. *Hoffman,* 199 Cal. 155 [248 P. 504], a murder case, the defendant denied ever having drawn a gun on anyone before. During the prosecution's rebuttal evidence a witness was permitted to testify, over objection, to the effect that three or four years prior, while he had been hunting on defendant's premises, defendant appeared holding a long gun and as the witness approached the defendant, the latter threatened to kill the witness if he came any closer. The court, in discussing the admissibility of this rebuttal evidence, stated: "We are of the view that this rebuttal evidence was properly admitted for it tended to impeach the testimony given by appellant that he had led an untroubled life and had never drawn a gun on anyone. In so holding we are not unmindful of the rules that a witness may not be impeached as to collateral matters, and, that proof of character by evidence of general reputation can be met only by evidence of general reputation and not by specific acts. Neither of these rules is, in our opinion, applicable so as to preclude the introduction of this rebuttal testimony." (*People* v. *Hoffman, supra,* p. 162. See also *People* v. *Westek,* 31 Cal.2d 469, 476 [190 P.2d 9].)

Since defendant denied having been a bookmaker on July 3, 1956, the prosecution was justified in introducing evidence to the contrary in rebuttal. Even though that evidence con-

cerned a crime other than that with which defendant was charged, it was admissible for the purpose of impeaching the testimony given by defendant in her own behalf. (See *People* v. *Rushing*, 130 Cal. 449, 453 [62 P. 742, 80 Am.St.Rep. 141]; *People* v. *Lowell*, 77 Cal.App.2d 341, 346 [175 P.2d 846].)

The judgment and order are affirmed.

Moore, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 4, 1957.